**James LANGLOIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 92–CV–1563.**
**Bankruptcy No. 90–12465.**

United States District Court,
N.D. New York.

April 21, 1993.

Ellen S. Ross, Johnstown, NY, for appellant.

Gary L. Sharpe, U.S. Atty., James C. Woods, Asst. U.S. Atty., James T. Foley, Albany, NY, for appellee.

U.S. Dept. of Justice, Tax Div., Mark D. Lansing, Washington, DC.

MEMORANDUM DECISION
AND ORDER

CHOLAKIS, District Judge.

James Langlois, debtor-appellant, appeals the decision of United States Bankruptcy Judge Justin J. Mahoney granting summary judgment in favor of the Internal Revenue Service (IRS). This Court has jurisdiction over the appeal under 28 U.S.C. § 158(a). Mr. Langlois presents two issues on appeal:

1. Whether the Bankruptcy Judge erred in holding that Mr. Langlois's taxes for 1982, 1983, and 1984 were not discharged in an earlier bankruptcy proceeding under 11 U.S.C. § 523;

2. Whether the discharge stay prescribed in 11 U.S.C. § 524 enjoins the IRS from reallocating Mr. Langlois's tax payments, after the effective date of the general bankruptcy discharge, in such a manner as to maximize revenue.

■ The standard of review in a bankruptcy appeal is set out in Fed.R.Bankr.P. 8013 and in the cases. The Bankruptcy Court's legal conclusions receive *de novo* review. *In re Ionosphere Clubs*, 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied sub nom.*, *Air Line Pilots Assn. v. Shugrue*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Factual findings "shall not be set aside unless clearly erroneous." *See* Fed. R.Bankr.P. 8013. The advisory committee notes to Rule 8013 indicate that the Rule "accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ. P." *Id.* 1983 Advisory Committee Note.

As explained below, the Court affirms the Bankruptcy Court's holding that Mr. Langlois's taxes were not discharged, but reverses the decision insofar as it permitted the IRS to reallocate payments during the period following the discharge.

*Factual Background*

The Bankruptcy Judge found the following facts. Mr. Langlois was a tax protester who filed a fraudulent income tax return in 1981 and fraudulent W–2 forms in 1982 and 1985. Mr. Langlois also consciously refused to pay federal income taxes for the years 1982, 1983, and 1984.

In 1987, Mr. Langlois changed his view regarding his obligations to pay income taxes, and filed a return for the years in dispute. Also in 1987, Mr. Langlois signed a plea agreement with the United States Attorney in which he admitted that he "knowingly and willfully failed to file income tax returns and pay said income taxes for 1982–1985 as required by law ..."

Thereafter but prior to December 20, 1989, Mr. Langlois made substantial payments to the IRS, the allocation of which is now in dispute. Originally, the IRS applied the payments first to the unpaid tax, allocating the remainder to the accrued interest and penalties. In late 1989, the IRS officially notified Mr. Langlois that he owed no underlying taxes—only specified penalties and interest thereon.

Mr. Langlois filed a bankruptcy petition in August, 1990 for relief under Chapter 7 of the bankruptcy code. Sometime after the filing of the bankruptcy petition, the IRS reallocated Mr. Langlois's earlier payments, applying the money first to the dischargeable penalties.[1] The IRS allegedly took this action so that interest on the unpaid underlying tax would continue to accrue and in order to maximize the nondischargeable portion of the overall debt. Mr. Langlois explains that the IRS's reallocation "left the underlying tax to continue to accrue interest as though the appellant had paid nothing." *See* Appellant's Brief at 10. The IRS explains that it reallocated the payments "in its best interest and to maximize the collection of the Appellant's income tax liabilities ..." *See* United States' Appeal Brief at 6. Believing that

---

1. The Bankruptcy Judge's findings of fact do not make it clear when the IRS reallocated Mr. Langlois's payments, i.e. whether it was before or after the discharge. The timing of the reallocation would determine whether the Court

should consult 11 U.S.C. § 362 (pre-discharge stay) or § 524 (post-discharge stay). On appeal, the parties frame the issue as arising under 11 U.S.C. § 524.

the discharge would extinguish the penalties (in contrast to the tax itself), the IRS attempted to collect as much penalty as it could by reallocating the prior payments. *See* 11 U.S.C. § 523(a)(7).[2]

On February 1, 1991, the Bankruptcy Court granted Mr. Langlois a general discharge of his debts under 11 U.S.C. § 524. Approximately two months later, the IRS served on Mr. Langlois notices of its intent to levy in order to collect $155,609.47 that it claimed was due. Mr. Langlois claims that he owes only $469.00 to the IRS.

In September, 1991, Mr. Langlois commenced an adversary proceeding in the Bankruptcy Court, seeking a ruling that the February 1, 1991 discharge extinguished his obligation to pay the remaining taxes, interest, and penalties.

During this adversary proceeding, the IRS contended that Mr. Langlois's general bankruptcy discharge did not relieve him of his tax liabilities because his alleged willful evasion of income tax rendered his tax liability non-dischargeable under 11 U.S.C. § 523(a)(1)(C). The scope of this provision is at the heart of this appeal. The IRS also claimed unfettered discretion to allocate payments, irrespective of any stay provisions of the Bankruptcy Code.

## Discharge of Tax Debt

As a general matter, a general bankruptcy discharge gives the debtor a fresh start by relieving him of the obligation to repay many pre-petition debts, including certain debts arising under the tax laws. The discharge available in a Chapter 7 bankruptcy is quite broad:

"Except as provided in section 523 of this title [11 U.S.C. § 523], a discharge under [section 727] discharges the debtor from all debts that arose before the date of the order for relief under this chapter ..."

*See* 11 U.S.C. § 727(b). Section 523 contains the exception to which section 727

refers, and in relevant part provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax ...

11 U.S.C. § 523(a)(1)(C). In the adversary proceeding below, the IRS contended that Mr. Langlois willfully attempted to defeat or evade his taxes for the years in question, and as a result, section 523(a)(1)(C) preserved his underlying tax liability.

In order to establish that a debt is non-dischargeable in bankruptcy, the creditor (here, the IRS) bears the burden of proving by a preponderance of the evidence that the claim should be exempted from the discharge. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Because the IRS relied on section 523(a)(1)(C), and because the IRS did not claim that Mr. Langlois acted fraudulently, the IRS had the burden of demonstrating that Mr. Langlois willfully attempted to evade or defeat his tax obligations. A debtor's willfulness is a question of fact. Judge Mahoney found that Mr. Langlois willfully attempted to evade his income taxes.

Before Judge Mahoney and now on appeal, Mr. Langlois urges the Court to adopt the definition of "willfulness" enunciated in *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). In *Cheek*, the Supreme Court held that, in a criminal tax prosecution, the Government must prove that the defendant knew of the duty to pay taxes and that he "voluntarily and intentionally violated that duty" in order to prove willfulness. *Cheek*, 498 U.S. at 201, 111 S.Ct. at 610, 112 L.Ed.2d at 629. If a defendant persuades the jury that he truly believed he had no duty to pay taxes,

---

**2.** Judge Mahoney did not make any findings of fact with respect to the amounts of money actually due as tax, interest, and penalty—before or after the IRS reallocation. The IRS's brief provides little clarification, and Mr. Langlois's papers are similarly unhelpful. Thus, it is difficult to trace the two allocations. It is clear, however, that the reallocation increased Mr. Langlois's post-discharge debt burden. This is a curious consequence of filing for bankruptcy protection.

even if that belief were objectively unreasonable, then the defendant would be entitled to an acquittal. In other words, if the criminal defendant subjectively, though unreasonably, believed that he had no duty to pay taxes, then he did not commit the offense of criminal tax evasion. Mr. Langlois urges the Court to adopt this definition of willfulness, because he says he once had a good faith belief that he had no duty to pay income taxes.

The Bankruptcy Court refused to apply the definition of willfulness from the criminal case, and instead relied on civil case law, specifically *Hochstein v. United States*, 900 F.2d 543 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 2967, 119 L.Ed.2d 587 (1992), and *Domanus v. United States*, 961 F.2d 1323 (7th Cir.1992). In *Hochstein*, a civil case involving the Government's collection of employment taxes under 26 U.S.C. § 6672, the Second Circuit stated that "the individual's bad purpose or evil motive in failing to collect and pay taxes properly play no part in the civil definition of willfulness." *Hochstein*, 900 F.2d at 548 (citations omitted). In the adversary proceeding below, Judge Mahoney adopted a common civil definition of willfulness, observing that "[i]f the intended result of a taxpayer's action was that the United States would not receive the income taxes, then he has acted willfully, notwithstanding a good faith belief."

Mr. Langlois urges the Court not to adopt this definition of willfulness because it has its roots in cases construing 26 U.S.C. § 6672, "a statute not applicable to this proceeding." Appellant's Brief at 18. Mr. Langlois, however, fails to explain why the Court should import the criminal definition from cases construing 26 U.S.C. § 7201—also "a statute not applicable to this proceeding." This civil bankruptcy action is more analogous to a civil action under 26 U.S.C. § 6672 than to a criminal action under 26 U.S.C. § 7201. Moreover, the Supreme Court in the *Cheek* case, upon which Mr. Langlois relies, carefully noted the special considerations involved in a criminal prosecution for tax evasion. *See Cheek*, 498 U.S. at 201, 111 S.Ct. at 610, 112 L.Ed.2d at 628 ("special treatment of [scienter requirement in] criminal tax laws is largely due to the complexity of the tax laws"). The high court specifically stated that its definition of willfulness in *Cheek*, had its roots in "prior decisions in *criminal* tax cases." *Id.* at 201, 111 S.Ct. at 610, 112 L.Ed.2d at 629 (emphasis added).

In sum, the Supreme Court's decision in *Cheek* does not command, or even suggest, that the lower courts should apply the criminal definition of willfulness in a civil proceeding like this one. The Bankruptcy Judge applied the proper meaning of the word "willfully" in this case.

Still, Mr. Langlois argues that the Bankruptcy Judge improperly relied on the *res judicata* effect of the 1987 plea allocation in reaching the factual conclusion that Mr. Langlois acted willfully in evading his income tax obligations.[3] Mr. Langlois argues that at the time of the 1987 plea agreement, the Second Circuit did not recognize a defendant's good faith (though objectively unreasonable) belief as a defense to a criminal tax evasion charge. The Supreme Court in *Cheek* later disapproved of the Second Circuit view. In Mr. Langlois's view, the intervening change in the meaning of "willfully", undermines the *res judicata* effect of the plea allocution and accompanying criminal conviction.

■ Even if the Court were to accept this argument,[4] the record is clear that Judge Mahoney did not rely entirely on the 1987 plea agreement in reaching his conclusion that Mr. Langlois acted "willfully." Judge Mahoney found that Mr. Langlois

---

**3.** In that 1987 plea allocution Mr. Langlois admitted that he "knowingly and willfully failed to file income tax returns and pay said income taxes for 1982–1985 as required by law ..."

**4.** The argument is fallacious. Even assuming that the Second Circuit in 1987 would have approved a criminal tax evasion conviction based on a showing of civil willfulness, Mr. Langlois cannot escape the fact that he admitted that he "knowingly and willfully" evaded taxes. At the time of his admission, under Mr. Langlois's own argument, the words that he uttered sufficed to show that he acted willfully within the civil—if not the criminal—meaning of the term.

admitted in his deposition that he "voluntarily and consciously determined not to pay any income taxes" and that based upon this conscious determination, Mr. Langlois did not pay any income taxes for 1982, 1983, and 1984. *See* Judge Mahoney's Order at 3. Further, Judge Mahoney reached his decision to grant summary judgment "upon the basis of the entire record," *id.* at 8, not simply upon the *res judicata* effect of the 1987 plea agreement. The Court cannot say that this factual finding of civil willfulness is clearly erroneous.

Accordingly, the Court hereby affirms the Bankruptcy Judge's decision insofar as he held that Mr. Langlois's willfulness rendered the taxes and interest non-dischargeable. *See* 11 U.S.C. § 523(a)(1)(C).

*Post–Discharge Reallocation*

■ The next issue is whether the IRS violated the post-discharge stay provisions of 11 U.S.C. § 524 by reallocating Mr. Langlois's payments from the non-dischargeable taxes and insurance to the dischargeable tax penalties.

There are three components of Mr. Langlois's overall federal income tax liability: (1) the underlying tax itself; (2) the interest on the underlying tax; and (3) the tax penalties. The IRS's reallocation of Mr. Langlois's payments becomes important in light of the dischargeability or non-dischargeability of the three components.[5] The Bankruptcy Court found that the underlying tax and the interest thereon were not discharged under 11 U.S.C. § 727 because Mr. Langlois acted willfully in attempting to evade his federal tax liabilities. *See* 11 U.S.C. § 523(a)(1)(C) and discussion above. In contrast, the Bankruptcy Judge determined, and neither party challenges the decision, that the penalties are dischargeable notwithstanding the non-dischargeability of the underlying tax. *See* Judge Mahoney's Order at 4–5, 8 ("the unpaid taxes and interest ... are not discharged"). Thus, after Mr. Langlois's first bankruptcy proceeding, his debt due to tax penalties evaporated, but his debt due directly to the tax and interest remained.[6]

Indeed, the IRS admits that several recent decisions of the Courts of Appeals inspired the agency to shift the payments away from non-dischargeable debts to dischargeable ones purposefully to increase the debt that would survive the discharge. *See McKay v. United States*, 957 F.2d 689, 693–94 (9th Cir.1992) (holding penalty dischargeable under 11 U.S.C. § 523(a)(7)(B) even though underlying tax is not dischargeable); *In re Roberts*, 906 F.2d 1440, 1441–45 (10th Cir.1990) (same); *In re Burns*, 887 F.2d 1541, 1544 (11th Cir.1989) (same).

By shifting Mr. Langlois's payments away from the component of the total tax liability that survived the discharge to the portion of the liability that did not, the IRS increased the amount of tax monies that it would be able to collect as a personal obligation of the debtor after the discharge. Everyone involved in the Bankruptcy Court

---

**5.** The Internal Revenue Code defines the word "tax" to include "interest" on the tax. *See* 26 U.S.C. § 6601(e)(1). Mr. Langlois concedes that the dischargeability of the interest depends on the dischargeability of the underlying tax. If the tax is discharged, the interest is discharged. Conversely, if the tax is not discharged, the interest is not discharged. *See* Appellant's Brief at 8.

**6.** Though the Bankruptcy Court did not expressly state its reasons for finding the penalty discharged, the Court probably relied on 11 U.S.C. § 523(a)(7), which provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7). Once the Court deciphers this "exception to an exception to an exception," it appears that penalties imposed with respect to transactions or events occurring three years before the filing of the bankruptcy petitions are discharged, regardless of whether the underlying tax itself is discharged. Here, the IRS presumably imposed its penalties on Mr. Langlois prior to three years before he filed his petition in August, 1990.

proceeding agrees that this was the purpose and effect of the reallocation. Even Judge Mahoney noted that "the reallocation of the monies by the IRS so as to retire the penalties first, placed the IRS in a more favorable position with respect to recouping more on its claim." *See* Judge Mahoney's Order at 4–5. Mr. Langlois complains, as he did before Judge Mahoney, that the post-discharge allocation of the debt violated the discharge stay of 11 U.S.C. § 524.

Section 524(a)(2) protects a debtor who has received a discharge in bankruptcy from certain actions of creditors to collect debts that are discharged under section 727 and the other bankruptcy discharge sections. Specifically, section 524(a)(2):

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

11 U.S.C. § 524(a)(2). The term "such debt" refers to debts that have been discharged by virtue of section 727 or its counterparts in the other bankruptcy chapters. Mr. Langlois argued to Judge Mahoney that the IRS's act of reallocating the payments to the dischargeable penalties following the discharge of the debt violated the discharge stay provision.

In rejecting Mr. Langlois's argument, the Bankruptcy Court relied principally on *Davis v. United States*, 961 F.2d 867 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). In *Davis*, the Ninth Circuit considered the authority of the IRS to reallocate taxpayer payments "in light of changed circumstances affecting debt collectibility." *Davis*, 961 F.2d at 878–79. Finding a need for flexibility and uniformity, as well as a lack of injury to the taxpayer, the Ninth Circuit "refused to tie the IRS's hands" and therefore allowed the Service to reallocate the tax payments. However, because *Davis* did not address the effect of a bankruptcy stay on the IRS's reallocation, that case is inapposite.

In the course of its opinion, the Ninth Circuit observed that the IRS has the right to allocate payments as it sees fit, provided the payments are either "involuntary" or "undesignated." *Davis*, 961 F.2d at 878; *see also United States v. Energy Resources Co.*, 495 U.S. 545, 548, 110 S.Ct. 2139, 2141, 109 L.Ed.2d 580 (1990) (recognizing IRS's distinction between voluntary and involuntary payments). Involuntary payments are those payments that a taxpayer makes under some official constraint, such as a judicial or administrative order. Undesignated payments are those that the taxpayer makes without earmarking them as payments for a specific debt, or portion of a debt (e.g. to the earliest tax first, then to interest, then to penalties). Because Mr. Langlois apparently did not designate his payments (other than by tax year), the IRS argues that it has the right to designate the payments in the best interests of the United States. The position of the IRS, however, ignores the bankruptcy stay.

Absent a bankruptcy stay, this Court might agree that the IRS may allocate undesignated or involuntary payments in the best interest of the federal fisc. Here, however, the debtor's undisputed discharge of the tax penalties limits the IRS's right to allocate the payments. In effect, by reallocating the payments to the discharged tax penalties, the IRS is seeking to collect the penalties as a personal obligation of the debtor after the discharge. If the IRS had not reallocated the payments, it would not now be able to collect the additional monies attributable to the penalty. By reallocating the payments after the discharge, the IRS attempts to collect the same monies attributable to the penalties. The economic substance of the IRS's tap dance is inescapable: the Service is seeking to collect the tax penalty that was discharged in bankruptcy.

Section 524(a)(2), barring creditors (including the IRS) from taking "an act, to collect, recover, or offset any such [discharged] debt as a personal liability," ties

the hands of the IRS in this case.[7]

*Conclusion and Disposition*

Because Judge Mahoney properly found, as a matter of fact, that Mr. Langlois willfully attempted to evade his income taxes, the Court affirms the Bankruptcy Court's decision insofar as it refused to discharge the debt for the tax and interest. To the extent, however, that the Bankruptcy Court allowed the IRS to reallocate payments and thereby recover the debt for penalties that had been discharged, the Court reverses the decision.

The case is remanded to the Bankruptcy Court for clarification of the amounts actually discharged and for further proceedings consistent with this opinion.[8]

IT IS SO ORDERED.

---

7. More metaphysically, because the bankruptcy code discharged the debt arising from the tax penalty, there was no tax penalty debt to which the IRS could apply the payments in February, 1991. The penalty was, concededly, discharged.

8. For example, the Bankruptcy Court should consider Mr. Langlois's motion for sanctions against the IRS.