**In re Jacob FREIDUS, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Jacob FREIDUS, Defendant.**

**Bankruptcy No. 891–82975–478.**
**Adv. No. 891–8369–478.**

United States Bankruptcy Court,
E.D. New York.

March 31, 1994.

---

Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman by Kenneth P. Silverman and Gary F. Herbst, Garden City, NY, for debtor/defendant.

Zachary W. Carter, U.S. Atty., E.D.N.Y. by Steven C. Bennett, New York City, for plaintiff.

### DECISION ON MOTION FOR SUMMARY JUDGMENT BASED UPON SUBJECT MATTER PRECLUSION FROM PRIOR GOVERNMENT AGENCY ORDER

DOROTHY EISENBERG, Bankruptcy Judge.

### BACKGROUND

This dischargeability action commenced by the Internal Revenue Service ("IRS") against Jacob Freidus ("Debtor" or "Freidus") is the most recent turn of events in connection with an ancient and protracted dispute. For over forty (40) years, the Debtor and the IRS have litigated over the Debtor's failure to pay several court awarded tax assessments and penalties that have now accrued to over $21,000,000.

From at least the 1940's until at least early 1960, the Debtor controlled a number of real estate corporations and partnerships with substantial assets. The Debtor and his former wife, Claire Freidus (now Claire Britt) (collectively the "Petitioners") filed joint federal income tax returns for the years 1949, 1950, 1954, 1955, 1956, 1958, 1959 and 1960. The Petitioners filed individual federal in-

come tax returns for the years 1951, 1952, 1953 and 1957.

During the same time frame, the following events took place. In 1950, prior to the Tax Court proceeding at issue in this case, the Debtor and his stepfather were convicted of income tax evasion. *U.S. v. Aaron*, 190 F.2d 144 (2d Cir.1951).

In 1951, the IRS made a $2,000,000 jeopardy assessment against the Petitioners covering deficiencies in income tax, additions to tax and interest for tax years 1941 through 1948.

Subsequently, the IRS found substantial deficiencies in the taxes declared by the Petitioners for tax years 1949 through 1960.

In 1963, the Petitioners commenced an action in the Tax Court to challenge the IRS' deficiency judgment.

As evidenced by a copy of the docket sheet from *Freidus v. Commissioner*, 39 TCM (CCH) 740, 1979 WL 3591 (1979), the Debtor was represented by various counsel at different times, and repeatedly requested delays and change of counsel throughout the proceeding. In fact, the Tax Court docket sheet reflects that Freidus and his former wife were represented by at least six (6) attorneys during the entire Tax Court proceedings, of which four (4) represented either the Debtor and his former wife, or the Debtor solely. The Debtor appears to have been quite involved with the Tax Court proceedings and did enter into one lengthy stipulation of facts dated June 29, 1973, which was signed by the Debtor. In addition to retained counsel, the Debtor also retained at least one accountant to assist him in the tax case. However, at the start of the trial, the Debtor represented to the Tax Court that while he did not concede any of the issues raised regarding the nature of the transfers between the entities in the answers, he nonetheless did not intend to participate and, in fact, did not participate in the ensuing trial. The Tax Court confirmed the fact that additional taxes were due from the Debtor, which should have been paid, but were not. That decision provided the reasons for upholding the assessment of taxes against the parties to that proceeding.

In 1979, the Tax Court upheld the IRS's findings of deficiencies and found that Freidus, his wife, Claire, and various members of his family had, over a span of twelve (12) years, devised the following plan. The parties used the earnings generated by their more profitable entities to provide funds for themselves in their individual capacities and for the other entities in which they held interests, which resulted in taxable, undeclared distributions to them. The Court further found that they personally and directly profited from these transactions and concluded that based on the entire record, no intent ever existed to consider the transfers that were made as bona fide loans, as claimed by the Debtor. *Freidus v. Commissioner*, 39 TCM (CCH) 740, 1979 WL 3591 (1979).

The decision by the Tax Court was appealable to the Second Circuit, but the Debtor did not exercise his right to appeal the Tax Court's decision.

On June 20, 1984, the Debtor's ex-wife offered to settle the case of *Claire Britt v. Commissioner of Internal Revenue*, No. 82–4167 (2d Cir.1984), and that case was settled. The settlement provided, *inter alia*, that "this settlement shall not affect the liability of Mr. Jacob Freidus." *Id.* The proposed settlement, confirmed by Claire Britt, and accepted by the IRS on August 7, 1984, also provided that "any property received from Jacob Freidus, at any time, will be immediately transferred to the United States, so long as there are any unsatisfied federal tax assessments against Jacob Freidus for the years 1949–1961 ... Any amounts collected by the United States from Jacob Freidus will first be applied against his separate return liability."

The Debtor has provided no concrete evidence that any funds or properties turned over to the IRS by Claire Britt were or are intended to satisfy the Debtor's obligations to the IRS. The only evidence provided supports a finding that the settlement made between Claire Britt and the IRS in no way absolves the Debtor of *his* debt to the IRS.

On September 1, 1988, the Government commenced an action in the Southern District of New York, *United States v. Jacob Freidus*, 88 Civ. 6116 (S.D.N.Y.) (RWS),

which arose from Freidus' refusal to pay his federal income taxes as determined in the Tax Court proceedings. Freidus failed to appear, answer, or make any motion with respect to the complaint. On November 21, 1988, pursuant to motion, United States District Judge Robert W. Sweet entered default judgment against Freidus in the amount of $17,067,796.99, together with interest and statutory additions accrued and accruing from August 1, 1988. To this date, the Debtor has paid no part of that judgment.

The parties subsequently engaged in discovery, during which the Debtor's current wife, Ella Freidus, asserted privilege under the Fifth Amendment. On July 9, 1991, after the District Court overruled the majority of Ella Freidus' claims of privilege, Freidus filed the instant no asset bankruptcy petition under Chapter 7 of the Bankruptcy Code. Pursuant to the automatic stay provisions of 11 U.S.C. § 362(a), the proceedings in the Southern District of New York against the Debtor were halted.

The Government timely filed its original adversary complaint objecting to discharge pursuant to 11 U.S.C. § 727(a) and §§ 523(a)(1)(B) and (C). Freidus moved to dismiss the original adversary complaint. The Court denied the motion in its entirety without prejudice and instead directed the parties to complete discovery, and further directed the Government to amend the adversary complaint after completing discovery. After completing the discovery for this adversary proceeding, the Government filed its First Amended Complaint, dated March 2, 1993.

The Debtor made a motion to dismiss the Government's First Amended Complaint, and the Government made a cross-motion for summary judgment and for dismissal of the Debtor's bankruptcy proceeding. At that hearing, the Court denied the Debtor's motion to dismiss the First Amended Complaint. The Court also denied the Government's cross-motion for summary judgment and for dismissal of the Debtor's bankruptcy proceeding, except with respect to the cause of action pursuant to 11 U.S.C. § 523(a)(1)(C), which is the matter presently before this Court. This remaining portion of the Government's cross-motion for summary judgment was adjourned to permit the parties to brief the issue of whether the Tax Court's findings in the 1979 decision collaterally estop the Debtor from relitigating the issues relevant to a finding that the Debtor's debt to the IRS is not dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). In other words, the remaining issue is whether the decision in *Freidus v. Commissioner, supra,* is sufficient to establish that Freidus either made a fraudulent tax return or willfully attempted in any manner to evade or defeat a tax pursuant to 11 U.S.C. § 523(a)(1)(C).

This Court finds that the United States Tax Court's decision is sufficient to preclude the issue of tax avoidance or evasion from being relitigated in this Court.

### DISCUSSION

■ Summary judgment may be granted only where there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *See Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 316 (2d Cir. 1992). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As to the Debtor's liability pursuant to 11 U.S.C. § 523(a)(1)(C), no genuine issue of material fact is alleged and none exists. Summary judgment is appropriate. The only issue of fact raised by the Debtor refers to an issue as to the Debtor's state of mind, motive or intent. Motive or intent is not pertinent to a determination by this Court. The issue before the Court is solely one of law.

■ Collateral estoppel bars relitigation of issues that have necessarily been determined in a prior proceeding, provided that the party to be barred had a full and fair opportunity to raise and litigate the claim and the disposition was on the merits. *McNeary v. Senecal,* 197 A.D.2d 835, 603 N.Y.S.2d 60 (3rd Dept.1993).

■ The Supreme Court has confirmed that the principal of collateral estoppel applies in Bankruptcy Court to preclude relitigation of factual or legal issues that were determined in a prior court of law. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order for the theory of collateral estoppel to be applied in dischargeability proceedings, three elements must be present:

1. the issue at stake must be identical to the one involved in the prior litigation;

2. the issue must have been actually litigated in the prior litigation; and

3. the determination of the issue in the prior litigation must have been essential to the prior judgment.

*In re Transworld Airlines, Inc. v. Hughes,* 449 F.2d 51, 58 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *In re Davis,* 3 F.3d 113 (5th Cir.1993); *In re Griffith,* 161 B.R. 727 (Bankr.S.D.Fla.1993); *In re Jardula,* 122 B.R. 649, 654 (Bankr.E.D.N.Y.1990) (citations omitted).

■ The party asserting collateral estoppel has the burden of proving that all elements apply. *In re Miera,* 926 F.2d 741, 743 (8th Cir.1991).

With respect to the first prong of the test, the factual issues must have been identical and the standard of proof must be met by a preponderance of the evidence. *Grogan v. Garner, supra.* Before this Court can determine whether the issues at stake are identical, it is necessary to review the controlling Bankruptcy Code provision, 11 U.S.C. § 523(a)(1)(C). This section states, in relevant part:

(a) a discharge under § 727 does not discharge an individual debtor from any debt:

(i) for a tax;

(b) with respect to which a return, if required—

(i) was not filed; or ...

(c) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

■ The Debtor urges the Court to read this section to require an affirmative act to evade the tax. According to the Debtor, in order to establish a willful attempt to evade a tax, the Government must show that (1) the debtor voluntarily and intentionally violated a known legal duty, and (2) took an affirmative act to evade payment of the tax. This standard would be consistent with the standard applied under the criminal provision of the Tax Code, 26 U.S.C. § 7201, which makes it a felony to "willfully attempt in any manner to evade or defeat any tax ... or the payment thereof." It is not, however, the standard for civil tax proceedings or for the issue of non-dischargeability in the Bankruptcy Court.

The Debtor's interpretation of 11 U.S.C. § 523(a)(1)(C) as to "willfulness" is not accepted by this Court, or by a majority of courts. *See In re Hedgecock,* 160 B.R. 380, 384–385 (D.Or.1993) ("the language of § 523(a)(1)(C) contains no indication that a heightened level of proof such as evidence of affirmative acts is required in order to show willfulness. It need only be shown that a debtor's conduct amounts to an intentional and knowing effort to evade or defeat taxes."); *Langlois v. United States,* 155 B.R. 818, 821 (N.D.N.Y.1993) (" '[T]he individual's bad purpose or evil motive in failing to collect and pay taxes properly play no part in the civil definition of willfulness.... If the intended result of a taxpayer's action was that the United States would not receive the income taxes, then he has acted willfully....' ") (citations omitted); *In re Peterson,* 152 B.R. 329, 334 (D.Wyo.1993) ("[A] 'finding of a combination of unexcused late filings and significant income misrepresentations are alone sufficient to show a willful attempt to evade payment for purposes of § 523(a)(1)(C)'.") (quoting *In re Berzon,* 145 B.R. 247, 252 (Bankr.N.D.Ill.1992)); *United States v. Toti,* 149 B.R. 829, 834 (E.D.Mich. 1993) ("[t]he proper definition of 'willfully attempted to evade' in the context of an 11 U.S.C. § 523(a)(1)(C) discharge case is that found in other civil tax cases—voluntary, conscious and intentional.")

■ Pursuant to the majority of case law on this issue, a willful attempt to evade a tax

debt will be found where: (1) the Debtor has a duty to pay the tax; (2) the Debtor knew the duty to pay existed; and (3) the Debtor voluntarily and intentionally violated this duty. *In re Laurin*, 161 B.R. 73 (Bankr. D.Wyo.1993); *United States v. Haas*, # 92–0585–P–C, Slip. Op. at 5 (S.D.Alaska, 7/6/93); *Langlois v. United States, supra.*

This Debtor is more knowledgeable than most as to the lawful duty to pay taxes and what is meant by the phrase "tax evasion", having participated in a legal proceeding resulting in a conviction for tax evasion prior to the underlying actions in the case at issue.

 Furthermore, the relevant section of the Bankruptcy Code includes the language "in any manner" in connection with evasion of taxes. The plain meaning of this Bankruptcy Code provision is to prohibit the discharge of tax debts where the taxpayer willfully attempts in any manner to evade or defeat any tax or payment thereof and includes willful attempts to evade taxes by concealing and transferring assets to protect them from either execution or attachment. *In re Griffith*, 161 B.R. at 732. The provisions of the Bankruptcy Code prohibiting the discharge of tax debts if a debtor willfully attempts to evade or defeat liability is to be read in the disjunctive to cover willful attempts to evade payment of taxes, as well as liability for taxes. *Id.*

Therefore, if the findings of fact made by the Tax Court establish that the Debtor participated in a scheme to enable him to avoid or evade payment of taxes, the first prong of the test for collateral estoppel will have been met.

It is clear from a reading of the Tax Court decision and the entire record therein that the factual issues as to whether the Debtor attempted to and did evade the payment of taxes was determined in that prior litigation.

Although the prior Tax Court action was instituted to determine whether the tax assessment was appropriate, after trial, the Tax Court determined that there was a plan, or scheme, to manipulate the sixty (60) entities so as to hide the taxes that would be due and payable by the Debtor. That determination was necessary to the decision upholding the tax assessment. The Court did not need to state that there was a fraud committed in order to fall within Section 523(a)(1)(C) of the Bankruptcy Code. That Court implicitly found, from all of the facts and circumstances before it, that the Debtor concealed taxable income and therefore the tax assessment was appropriate. In order to make the decision that was entered, it was necessary for that Court to determine whether the Debtor had any justifiable reason for his actions. If the Court had found any business purpose or evidence of loans as claimed by the Petitioners, it would not have affirmed the assessment.

The Tax Court found that during the tax years 1948–1960, Debtor and others moved more than $8,000,000 through a network of approximately sixty entities and individuals. The purpose and net result of these transfers was to permit the Debtor and others to evade the $2,000,000 assessment made by the IRS in 1951, and to receive dividends from various corporations without paying any gains tax for the years 1949 through 1960. As the Tax Court found, Freidus acquired more than $3.6 million in unreported dividends through this scheme. (Tax Court decision at pp. 754 and 756.)

In addition, the Tax Court specifically found that Freidus had taken steps to conceal his scheme. The Tax Court noted: *"it is readily apparent that petitioners devised a plan to syphon earnings* from some of the more profitable entities of this closely knit group to other entities ..." *Id.* at 755 (emphasis added).

Moreover, the Tax Court concluded that this "elaborate plan" was designed to "directly benefit" the Debtor and others, *Id.* at 756, and the Tax Court found "no conceivable business nexus" and "no corporate purpose ... that would impel such transfers of funds ...". *Id.* at 756.

The Tax Court further found that these transfers were not, as the Petitioners claimed, bona fide loans:

There is no indication of the payment or accrual of interest by the recipients of the funds; the transfers were not documented by notes or by any assignments of securi-

ty; there is no significant evidence of any existing plan or method of repayment of these advances; nor is there any indication that the financial ability of the transferee entities to repay the funds was ever considered ... No single factor is determinative. Instead, we have examined all of the facts and circumstances against the backdrop of this unique pattern of events lasting for years to determine the intent of the parties. We conclude, on the basis of the entire record, that no intention ever existed to consider these transfers as bonafide loans.

*Id.* at 756.

The findings of fact made by the Tax Court support only one conclusion ... that the Debtor participated in a scheme through a series of transfers spanning over twelve years, which transfers had no apparent business or corporation purpose and did not bear any indicia of loans (*i.e.* no indication of interest, no documentation, no method of repayment), which transfers resulted in constructive distributions, taxable to the Petitioners.

These same findings support this Court's conclusion that the debt to the IRS is non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The transfers commenced shortly after the $2,000,000 assessment was made and had no purpose other than to conceal taxable income, to avoid payment of the assessment, and to avoid paying taxes on any income which accrued thereafter. Based on the duplicity involved in the transfers, the Debtor's under-reporting of income and his subsequent failure to the date of this petition to pay *any* deficiencies, it is apparent, by a preponderance of the evidence, that the Debtor willfully attempted to evade or defeat such tax.

 It is clear to this Court that the issue was fully and fairly litigated in the prior litigation. A full and fair opportunity to litigate exists where a party has exercised control over a lawsuit and has been permitted to present arguments. *United States v. Davis,* 906 F.2d 829, 833 (2d Cir.1990). So long as a party has appeared in a proceeding and has been given the opportunity to be heard, the party is bound by the outcome even if the party chooses not to contest the proceeding. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir.1992), *cert. denied, Fugazy v. Metromedia Co.,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

 From the time in 1963 that the Debtor and his former wife commenced the Tax Court proceeding to challenge the IRS deficiency, the Debtor actively litigated that case and was permitted to present his position. Despite the Debtor's ultimate decision not to contest the issues raised by the IRS at trial, the Debtor was given ample opportunity even after the trial was completed to file a brief in response to the Commissioner of Taxes. In addition, the Tax Court decision was expressly recognized as appealable to the Second Circuit. *See Freidus v. Commissioner,* 39 TCM (CCH) at 740, an option the Debtor chose not to exercise.

The Court also finds that the Tax Court's determination that the Debtor participated in a plan which resulted in non-payment of taxes that should have been paid was necessary for the judgment in the earlier action.

All three elements of collateral estoppel have been met. The issue of attempted tax avoidance has already been determined by the Tax Court. There would be no valid purpose served in conducting a trial anew. It is time to put Jacob Freidus' duty to pay taxes to rest. The Tax Court's decision is sufficient for a finding by this Court that the debt to the IRS is non-dischargeable pursuant to Section 523(a)(1)(C) of the Bankruptcy Code.

## CONCLUSION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

This Court finds that the issue decided in the Tax Court decision of 1979 was based on the same issues which have to be determined pursuant to Section 523(a)(1)(C); that the issue was actively litigated in that prior proceeding; and that the determination in that prior proceeding was essential to the prior

judgment. Therefore, the Debtor is estopped from relitigating that issue here.

This Court finds as a matter of law that based upon the Tax Court's decision in 1979, the Debtor's debt to the IRS is not dischargeable pursuant to Section 523(a)(1)(C) of the Bankruptcy Code.

The Plaintiff's motion for summary judgment seeking a declaration that the tax deficiency owed by the Debtor is non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C) is granted.

Normally, the issue to be precluded does not determine the entire case. However, where the issue is one that goes to the underlying merits of a case so that nothing further remains to be decided, then the entire case shall have been dealt with. In this case, the IRS is the Debtor's only creditor and there are no assets to be distributed by a trustee. Since this Court has determined that the debt to the IRS is non-dischargeable, nothing further remains to be adjudicated in this case and the Plaintiff's motion to dismiss the petition will be granted.

Settle an Order in accordance with this decision.