In re Virgil G. WRIGHT, Debtor.

Virgil G. WRIGHT, Appellant,

v.

The INTERNAL REVENUE SERVICE and the Washington State Department of Revenue, Appellees.

No. 95 Civ. 4567 (MBM).

United States District Court, S.D. New York.

Dec. 26, 1995.

Joseph J. Haspel, Kurtzman Haspel & Stein, Spring Valley, NY, for Appellant.

Mary Jo White, United States Attorney for S.D.N.Y., Jeffrey Oestericher, Assistant United States Attorney, New York City, for Appellees.

## OPINION AND ORDER

MUKASEY, District Judge.

Virgil Wright appeals a decision of the Bankruptcy Court denying him a discharge of his tax debts. For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

### I.

Wright is an anesthesiologist who currently resides in Bermuda. On July 14, 1993, he filed for protection from his creditors under Chapter 7 of the Bankruptcy Code. *In re Virgil G. Wright*, No. 93 B 43613 (FGC) (Bankr.S.D.N.Y.). On November 11, 1993, Wright commenced an adversary proceeding in the Bankruptcy Court seeking to discharge his tax liability for the tax years 1982 through 1989. (R. Ex. 3) The Internal Revenue Service opposed discharge on the ground that Wright had willfully attempted to evade or defeat his tax obligations. *See* 11 U.S.C. § 523(a)(1)(C) (1994).

On December 21, 1994, following a trial, the Bankruptcy Court ruled that plaintiff's federal tax liability was not dischargeable and awarded the IRS $473,244.03 in overdue taxes, interest and penalties. Plaintiff appeals to this court under 28 U.S.C. § 158(a)(1) (1994).

### II.

The district court reviews *de novo* the Bankruptcy Court's determinations on issues of law. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Under the Bankruptcy Code, a debtor may obtain relief from federal income tax liability for any tax year for which a return was due more than three years prior to the filing of the bankruptcy petition. 11 U.S.C. §§ 507(a)(7)(A)(i), 727, 1141(d)(1) (1994). However, debtors shall not be discharged from a debt for a tax if the debtor "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The IRS bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

Section 523 does not define what constitutes a "willful attempt to evade or defeat" a tax. To interpret this language, the Bankruptcy Court adopted the three-part test applicable under Section 6672 of the Internal Revenue Code, which imposes civil penalties on any taxpayer "who willfully attempts in any manner to evade or defeat any ... tax or the payment thereof." 26 U.S.C. § 6672(a) (1988 and Supp. V 1993). (Hr'g Tr. at 198–199) Under that test, a willful attempt to evade or defeat a tax is established if the debtor (1) had a duty to pay the tax, (2) knew of that duty, and (3) voluntarily and intentionally violated the duty. As the Bankruptcy Court noted, numerous courts have

adopted this test as the standard for willful evasion under Section 523. *See, e.g., Matter of Bruner*, 55 F.3d 195, 200 (5th Cir.1995); *In re Toti*, 24 F.3d 806, 809 (6th Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994); *In re Semo*, 188 B.R. 359, 362 (Bankr.W.D.Pa.1995); *In re Freidus*, 165 B.R. 537, 541–542 (Bankr.E.D.N.Y. 1994); *In re Angel*, No. 93–11683–BH, 1994 WL 69516, *3 (Bankr.W.D.Okl. Feb. 24, 1994); *In re Laurin*, 161 B.R. 73, 75 (Bankr. D.Wyo.1993); *Langlois v. United States*, 155 B.R. 818, 821 (Bankr.N.D.N.Y.1993).

■ To satisfy this test, it is not necessary to prove that the debtor was inspired by "bad purpose or evil motive" in failing to pay his taxes. *Id.* (quoting *Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir.1990)). It is enough if the debtor "had the wherewithal to file his return and pay his obligation," but "voluntarily, consciously, and intentionally" decided to pay other creditors instead. *Toti*, 24 F.3d at 809. *See also Hochstein*, 900 F.2d at 548 ("A person willfully fails to pay withholding taxes under section 6672 when he pays other creditors with knowledge that withholding taxes are due"). Evasion may be established under Section 523 by acts of omission as well as acts of commission. *Bruner*, 55 F.3d at 200; *Toti*, 24 F.3d at 809.

■ The first two elements of the willfulness test—that Wright had a duty to pay his tax liability, and that he knew of this duty— were uncontested below and likewise are not disputed on appeal. (Appellant's Br. at 4) Applying the third element of the test, the Bankruptcy Court found that Wright's failure to pay his taxes was voluntary and intentional. (Hr'g Tr. at 200) Wright was not simply penniless, the Court explained. Rather, Wright earned substantial income and chose to apply it towards expenses other than his tax liability. (*Id.*)

First, Wright spent thousands of dollars on tuition payments for Ivy League educations for his children. Had Wright sent his children to state universities or asked them to take out additional student loans, the Court surmised, he might have been able to meet his obligations to the IRS. (*Id.*)

Second, Wright paid substantial credit card charges incurred by his wife and daughter. Wright made no effort to curtail these expenditures as his tax debt mounted. (*Id.* at 202–203) Third, Wright took expensive personal trips to Cancun and Europe, and to destinations within the United States to visit his children. (*Id.* at 202) Fourth, Wright helped support his brother and regularly sent checks to his mother. (*Id.* at 205)

The Bankruptcy Court expressed sympathy for Wright and praised Wright's commitment to the support of his family, but explained that this did not make his tax avoidance any less willful. However noble it may have been to pay his personal family expenses, "he did it to his own detriment." (*Id.* at 200)

The Court stressed that Wright did not simply passively ignore his tax liability; Wright also committed affirmative acts of tax avoidance. For example, less than a week after the IRS, in an effort to collect delinquent taxes, imposed a levy on the billing service handling Wright's accounts receivable, Wright applied to form a professional service corporation to receive payments due to him. Wright explained to the office manager of the billing service that he was withdrawing from the billing service and forming the corporation "under the advice of his attorney as a way to get around the levy." (*Id.* at 200–201)

The Court also found affirmative acts of avoidance in Wright's management of his personal finances. As Wright's tax advisor candidly observed in a 1989 letter, Wright had "not maintained a personal bank account for about the last one and a half years because of the prior levy on [his] accounts." (*Id.* at 202; Govt. Ex. 10)

### III.

Wright concedes that "he voluntarily chose to pay other obligations in lieu of taxes." (Appellant's Br. at 3) He argues on appeal that he nevertheless did not willfully attempt to evade his tax liability because he had no "sinister scheme" and because he "merely chose to allocate his resources to obligations other than taxes." (*Id.* at 7) Wright relies almost exclusively on *In re Haas*, 48 F.3d

1153 (11th Cir.1995), which was handed down three months after the Bankruptcy Court's ruling.

In *Haas,* the debtor did not pay income or employment taxes for a period of eight years. The debtor filed returns for those tax years, but "used his income to pay his personal and business debts rather than his tax liability." *Id.* at 1154. For three of the tax years at issue, the debtor pleaded guilty to criminal tax evasion charges. Nevertheless, the Bankruptcy Court found that the tax debts were dischargeable. "Mr. Haas readily acknowledged the tax liability," the Court reasoned,

> and, other than his failure to pay the obligation, made no attempt to defeat or evade his obligation. The debtor[ ] did not conceal assets, engage in dubious transfers of assets, falsify or destroy books or records, or misstate the amount of income in the respective years at issue.

*Id.* n. 2.

The District Court reversed. Applying the three-part test used by the Bankruptcy Court in the present action, the Court held that "where the debtor is *financially able* to pay the taxes due, but chooses not to do so, the government has met its burden of proof." *In re Haas,* 173 B.R. 756, 759 (S.D.Ala.1993).

The Court of Appeals reversed. The Court acknowledged that the language of Section 523(a)(1)(C) is broad, embracing willful attempts to avoid taxes "in any manner." *Haas,* 48 F.3d at 1155. However, the Court suggested that under the District Court's reading of the statute, all tax debts effectively would be nondischargeable. The Court characterized the debtor as "honest but unfortunate," and feared frustrating the "fresh start" policy of the Bankruptcy Code. *Id.* at 1156 (citing *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991)). The debtor's failure to pay his taxes, the Court explained, "is not the result of dishonesty but of the defining characteristic of all debtors—honest and dishonest alike—insufficient resources to honor all of [his] obligations." *Id.*

Because the Court considered the result under the plain language of the statute—nondischargeability—to be absurd, it looked elsewhere for interpretive guidance. *Id.* The Court observed that in four similarly worded provisions in the Internal Revenue Code, including the one relied upon by the Bankruptcy Court in the present action, Congress took action against willful attempts to evade or defeat a tax "or the payment thereof." *Id.* (citing 26 U.S.C. §§ 6531(2), 6653, 6672, 7201) The inclusion of the phrase "or the payment thereof," the Court reasoned, indicated that Congress was "capable of distinguishing between evasion of a tax and evasion of the payment of a tax." *Id.* From the absence of this phrase in Section 523, the Court inferred that a tax debt should not be nondischargeable if the debtor willfully attempted to avoid only the *payment* of tax liability as distinguished from the liability itself. *Id. See also In re Gathwright,* 102 B.R. 211, 213 (Bankr.D.Or.1989) (distinguishing between an attempt to evade a tax and an attempt to evade payment of a tax). Under this view, a tax debt is nondischargeable when a debtor challenges the legitimacy of taxation altogether, because this is a wholesale attempt to evade a tax. In contrast, a tax debt is dischargeable if a debtor acknowledges the validity of taxation in the abstract, but simply refuses to pay the tax, because this is a mere attempt to evade payment of a tax.

Like the Fifth Circuit, *see Bruner,* 55 F.3d at 200, I am unpersuaded by the reasoning in *Haas.* First, I find no ambiguity in the broad language of Section 523(a)(1)(C). That provision embraces intentional attempts to evade tax liability "in any manner." I agree with the *Haas* Court that under a straightforward, "plain" reading of the statute, it will be difficult for a taxpayer who decides to spend his substantial income on expenses other than taxes to obtain discharge. However, I fail to see why that result is so absurd as to compel the conclusion that the statute cannot mean what it says.

Second, I question the Eleventh Circuit's heavy reliance on the minor textual disparity between Section 523(a)(1)(C) and the analogous provisions of the Internal Revenue Code. "The fact that a person would not be a felon for simple non-payment of tax under

the Internal Revenue Code does not persuade [me] that when a person 'willfully attempts to evade or defeat' a tax by non-payment, it must be dischargeable in bankruptcy." *Bruner*, 55 F.3d at 200. Moreover, I have difficulty believing that Congress intended to place so much emphasis on the tenuous distinction between avoiding a tax and avoiding payment of a tax. Under the *Haas* understanding of Section 523, a debtor could embark on a spending spree and stubbornly refuse to pay his taxes for several years, yet could still qualify for tax debt discharge as long as he couples his failure to pay with an empty acknowledgment of his tax liability. Accordingly, the majority of courts to address this issue have criticized and rejected the reasoning in *Haas* and *Gathwright. See In re Ketchum,* 177 B.R. 628, 630–631 (E.D.Mo.1995); *Freidus,* 165 B.R. at 542; *In re Irvine,* 163 B.R. 983, 987 (Bankr.E.D.Pa.1994); *In re Fridrich,* 156 B.R. 41, 42–43 (D.Neb.1993); *In re Peterson,* 152 B.R. 329, 335 (D.Wyo.1993); *In re Lewis,* 151 B.R. 140, 146 (Bankr.W.D.Tenn.1992); *In re Berzon,* 145 B.R. 247, 250 (Bankr. N.D.Ill.1992); *In re Sells,* No. 90–B–06403 D, 1991 WL 328039, *6–*7 (D.Colo.1991); *In re Jones,* 116 B.R. 810, 815 (Bankr.D.Kan.1990).

In any event, even if *Haas* were controlling here, Wright would fare no better. Discharge is appropriate under *Haas* only where a debtor has undertaken no "affirmative acts" to frustrate the satisfaction of his tax obligations. *Haas,* 48 F.3d at 1154. There is evidence that Wright adroitly manipulated his personal finances so as to thwart IRS attempts to collect the taxes he owed. As noted above, Wright rerouted revenue generated by his anesthesiology practice to a new corporation created expressly for the purpose of avoiding the IRS levy. *See* Govt.Ex. 50 at 24. Similarly, Wright closed out bank accounts to impede IRS attempts to locate his assets. *See* Govt.Ex. 10 at 1. Therefore, Wright's tax debt would not be dischargeable even under the lenient standard of *Haas.*

\* \* \*

Because Wright voluntarily, consciously, and intentionally avoided his tax obligations, the Bankruptcy Court properly determined that his tax debts are not dischargeable. The judgment of that Court is affirmed.

SO ORDERED.