In re Edward J. SULLIVAN, Jr., Debtor.

Edward J. SULLIVAN, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 93–16014.
Adv. No. 95–1714.

United States Bankruptcy Court,
N.D. Ohio.

Sept. 20, 1996.

Frederick N. Widen, Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Cleveland, Ohio, for Plaintiff–Debtor.

S. Robert Lyons, Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

The Debtor, Edward J. Sullivan, Jr., seeks a declaration that more than four million dollars in taxes, penalties, and interest are dischargeable under section 523(a)(1)(B)(ii) of the Bankruptcy Code. Both the Debtor and the Internal Revenue Service (the "IRS") filed cross-motions for summary judgment and have stipulated the facts required for the Court's decision. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This memorandum sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Facts

The Debtor did not timely file his income tax returns for 1981, 1982, 1983, and 1984. At that time, he was in the construction business and had hired an accounting firm to prepare his tax returns. However, when his business and finances soured, he was unable to pay the accounting firm and it ceased work on the returns. The Debtor apparently believed that he was not qualified to prepare the returns on his own and therefore did not complete the work on his returns begun by his accountants.

In August 1986 the IRS prepared Substitutes for Return for the Debtor's 1981 through 1984 tax years and sent him a "30–day letter" setting forth the IRS' determination of the Debtor's tax obligations on November 6, 1986. The Debtor protested the tax determinations in the 30–day letter and the parties had a number of communications in respect of the Debtor's tax liability over the next several years.

On February 28, 1991, the IRS sent Debtor a statutory notice of deficiency which, with minor adjustments, set forth the same tax obligations contained in the 30–day letter. The IRS identifies the notice of deficiency as a "90–day letter" because the taxpayer has 90 days after the notice is issued to file a petition in the Tax Court requesting a redetermination of the deficiency. 26 U.S.C. §§ 6212(a); 6213(a). During this 90 day period, the IRS is precluded from making any assessment of the tax deficiency. 26 U.S.C. § 6213(a). If the taxpayer fails to file a petition in Tax Court within the 90 day period, his only recourse is to pay the tax and, if he disputes the IRS' determination, file for a refund in district court or U.S. Court of Federal Claims. 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a). See also *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (explaining history of the suit for refund).

The Debtor took no action within the 90–day period, which expired on May 29, 1991. Approximately one week later, on June 5, 1991, he filed Form 1040's for tax years 1981 through 1984 showing aggregate taxes of about $49,000. Although these 1040's indicated that they were prepared on an estimated basis, the IRS stipulated in oral argument that they would have qualified as tax returns except that they were filed too late to have any legal significance.

On June 10, 1991, the Debtor signed Forms 870 Waivers of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overpayment. By signing the 870's the Debtor consented to the IRS assessment of the taxes shown in the 90–day letter. On July 19, 1991, the IRS assessed the taxes and additions to tax set forth in its February 28, 1991, 90–day letter.

The Debtor filed this case on December 21, 1993, and received his discharge on April 25, 1994. He filed this adversary proceeding on November 13, 1995. Although the IRS had originally suggested that the Debtor had the

funds to pay his taxes in the early 1980's when they became due and, therefore, that his failure to file returns or make estimated tax payments constituted a willful attempt to evade or defeat such taxes under section 523(a)(1)(C) of the Bankruptcy Code, it relinquished this theory. Therefore, the sole issue in this proceeding is whether the Debtor's 1040's were filed too late to qualify as "returns" within the meaning of section 523(a)(1)(B) of the Bankruptcy Code.

### *Analysis*

In the usual chapter 7 case, section 727 of the Bankruptcy. Code discharges a debtor from debts that arose before the case was filed except as otherwise provided in section 523 of the Bankruptcy Code. Section 523(a)(1)(A) generally excludes from discharge taxes for which a return, if required, is last due within the three years prior to the filing of the bankruptcy case. Taxes for earlier years are dischargeable in the absence of fraud or failure to file a return. Therefore, had the Debtor filed timely returns for his 1981 through 1984 tax years, the taxes for those years would have been discharged. Where the return is filed late, the taxes in question remain nondischargeable in a bankruptcy proceeding filed earlier than the second anniversary of the late filed returns under section 523(a)(1)(B)(ii) of the Bankruptcy Code. Section 523(a)(1)(B) provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> . . . .
>
> (B) with respect to which a return, if required—
>
> (i) was not filed; or
>
> (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition.

11 U.S.C. § 523(a).

Debtor filed his 1040's for 1981 through 1984 more than two years prior to the date he filed this case. The IRS asserts, however, that section 523(a)(1)(B)(i) and not 523(a)(1)(B)(ii) is applicable to those tax years because the 1040's were filed too late to qualify as "returns" for purposes of section 523(a)(1)(B).

The returns were filed a week after expiration of the 90–day period during which Debtor could have initiated a proceeding in Tax Court to contest the IRS' determination of his taxes for those years. By that time the IRS had completed the work required to determine Debtor's tax obligations, and those obligations had become final subject only to assessment which, the IRS argues, is only a bookkeeping entry made at the discretion of the IRS as a prelude to enforcing its liens and other remedies. The IRS asserts that by the time the returns were filed the Debtor had lost the legal right to self assess his tax liabilities for those years and, therefore, that his 1040's, although in acceptable form, were nullities. No case was cited to the Court which directly supports this conclusion, but the IRS relies upon several bankruptcy cases which dealt with somewhat similar facts.

In *Gentry v. United States (In re Gentry),* 1995 WL 644045 (Bankr.M.D.Tenn.1995), the debtor did not file tax returns but instead filed IRS Forms 870 and 4089 approximately 16 months after the IRS had assessed a deficiency against him. He argued that the forms filed qualified as returns under section 523(a)(1)(B). The court held that the debtor's execution and submission of Forms 870 and 4089 "came too late, and that the tax liabilities remain[ed] nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(i)." *Gentry* at *2. The court did not explain whether the debtor's filings failed to qualify as returns under section 523(a)(1)(B) because of the nature of the forms filed, because they were filed after the taxes had been determined and assessed by the IRS, or because 16 months after assessment was just too long. No similar defect exists in the proceeding. Here the Debtor filed tax returns on Form 1040, not simply a Form 870 Waiver of Restrictions. In this proceeding the IRS had not made any assessment of the taxes due when the returns were filed and did not do so until approximately six weeks after the re-

turns were filed. Finally, the returns were filed only one week after the expiration of the Debtor's time to protest the IRS' deficiency determination set forth in the 90–day letter and the IRS has conceded that, had they been timely filed, they would have qualified as tax returns.

In *Gushue v. Internal Revenue Service (In re Gushue)*, 126 B.R. 202 (Bankr.E.D.Pa. 1991), the debtor never filed any sort of return for the tax year in question. After receipt of a 90–day letter the debtor filed a proceeding in Tax Court to contest the IRS' determination and the parties subsequently entered into a stipulation incorporating the parties' agreement as to the tax owed. In his subsequent bankruptcy case the debtor argued that this stipulation constituted a late-filed tax return for purposes of section 523(a)(1)(B). The court held, however, that a stipulation did not qualify as a tax return under applicable authorities. *Gushue*, 126 B.R. at 204–05. For this reason the court did not consider or discuss the dispositive issue in this case—whether papers which in form qualify as tax returns were filed too late to retain that status.

In *Arenson v. United States (In re Arenson)*, 134 B.R. 934 (Bankr.D.Neb.1991), the debtor filed Forms 1040X several months after the IRS assessment. The 1040X is used to amend prior returns, but no prior returns had been filed by the Debtor. The only prior filings were the IRS determinations of tax, which the cases had held unanimously could not qualify as returns for purposes of section 523(a)(1)(B). *Arenson*, 134 B.R. at 935. The court concluded that "the amended returns filed by the debtor should not be considered a 'return' for the purpose of § 523(a)(1)(B)(i)" but did not otherwise explain its holdings except to note that "I believe that this result is generally accepted by analogy and inference by decisions which include *Badaracco v. Commissioner*, 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984); *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934); *National Paper Products Co. v. Helvering*, 293 U.S. 183, 55 S.Ct. 132, 79 L.Ed. 274 (1934); *Kaltreider Construction, Inc. v. United States*, 303 F.2d 366, 368 (3d Cir.

1962)." *Arenson*, 134 B.R. at 935. None of these cases supports the conclusion that the Debtor's Form 1040's were filed too late to qualify as returns under section 523(a)(i)(B).

In *Badaracco*, supra, the taxpayers filed accurate amended returns only after the IRS initiated enforcement action against them for filing fraudulent returns. The IRS failed to assess the taxes due under the amended returns until more than three years after the amended returns were filed, and the taxpayers sought to take advantage of the statute of limitations in 26 U.S.C. § 6501(a) which, in general, bars assessment of income taxes later than three years after the return is filed. If, however, the taxpayer files a false or fraudulent return with the intent to evade the tax, 26 U.S.C. § 6501(c)(1) provides that the IRS may assess the tax at any time. Section 6501(c)(3) also permits assessment at any time if no return is filed. These sections provide as follows:

(a) General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

. . . .

(c) Exceptions.—

(1) False return.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

. . . .

(3) No return.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

26 U.S.C. § 6501.

In *Badaracco* the Supreme Court held that once a fraudulent return had been filed the

taxpayers could not cure that return by filing a truthful return after the fraud had been discovered and thereby invoke the three year period in section 6501(a) to cut short the IRS' right to assess the tax at any time under section 6501(c)(1). *Badaracco,* 464 U.S. at 393, 104 S.Ct. at 761. This holding does not, however, support the IRS' argument in this proceeding.

Although the Court adduced policy arguments to support its holding, it relied primarily on the plain meaning of the statutory language quoted above. To prevail here the IRS cannot rely on the plain meaning of section 523(a)(1)(B), which prescribes no time limit for filing a late return. The IRS must limit the plain meaning of section 523(a)(1)(B) to prevail on its argument that the Debtor's 1040's were filed too late to qualify as returns. Section 6501(c)(3), like section 523(a)(1)(B)(i) of the Bankruptcy Code, permits the IRS to assess the tax at any time if the taxpayer fails to file a return. *Badaracco* makes clear, however, that under section 6501(a) the taxpayer can limit the IRS' time to assess and commence the usual three-year limitation period by filing a late return, even where the taxpayer fraudulently failed to file a timely return. *Badaracco,* 464 U.S. at 401, 104 S.Ct. at 765–66.

The IRS does not rely on any of the other cases cited in *Arenson,* supra, all of which deal with the issue of whether filing an amended return starts a new limitations period when it is necessary to amend a previously accurate return because of a court decision or statute given retroactive effect. The IRS does rely on *Blenheim v. Comm'r,* 125 F.2d 906 (4th Cir.1942) for the proposition that when a document is tendered to the IRS after the taxpayer can no longer self-assess, the document does not constitute a return. This reliance is misplaced. *Blenheim* dealt with a foreign corporation's inability to take certain deductions under a statute that specifically denied these deductions to foreign corporations that did not file required returns. Unlike either 26 U.S.C. § 6501 or 11 U.S.C. § 523(a), the statute in *Blenheim* contained no provision governing late filed returns. Moreover, the *Blenheim* court noted its decision was based on the particular facts

of the case and it declined to create "an absolute and rigid rule" of the sort the IRS urges this Court to adopt. *Blenheim,* 125 F.2d at 910.

The IRS is, in effect, urging the Court to interpret section 523(a)(1)(B) of the Bankruptcy Code more restrictively against debtors than the courts have interpreted similar provisions in the Internal Revenue Code against taxpayers. Section 523(a) reflects a compromise between conflicting objectives of bankruptcy and tax law—providing the debtor a fresh start and enforcing tax collections. The obligation for recent taxes is not dischargeable even though the debtor has filed all returns and paid all taxes to the extent of his ability. On the other hand old taxes are dischargeable unless the debtor is guilty of fraud or has willfully attempted to avoid or defeat the tax, 11 U.S.C. § 523(a)(1)(C), or has failed to file a required return. 11 U.S.C. § 523(a)(1)(B)(i). In the latter situation, the debtor may still discharge the taxes in question if he files a late return and if more than two years expire before he files his bankruptcy case. *Id.*

The legislative history adduced by the parties does not flesh out this compromise in greater detail and suggests no reason to apply section 523(a)(1)(B) other than in accord with the ordinary meaning of its language. The legislative history reflects only a dispute between the House, which would have afforded the IRS only one year after a late filed return to take action against a debtor before the taxes became nondischargeable, and the Senate, which would have given the IRS three years. Section 523(a)(1)(B), as enacted, split the difference.

The IRS was not willing to specify a point prior to which a debtor could file a late return under section 523(a)(1)(B)(ii) but after which such filing came too late to qualify as a return. It asserted, however, that the time for filing had expired in this case with the expiration of the 90 days for the Debtor to contest the IRS tax determination in Tax Court despite the fact that the IRS had not assessed the tax. It argued that assessment is simply a ministerial act solely within the power and discretion of the IRS once the 90–day period for contesting a notice of deficien-

cy had expired. It suggested that a debtor's filing might be too late to qualify as a return even prior to expiration of the 90–day period because the IRS might by that time have gone to the effort of auditing the debtor's income and computing the debtor's tax without his cooperation and that it would be inconsistent with the debtor's self-assessment obligation to permit the debtor thereafter to file a return to take advantage of the two-year limitations period in section 523(a)(1)(B)(ii). The crux of its argument is that a debtor's filing is too late to qualify as a return when the debtor has lost the ability to self-assess or, perhaps, when it would be unfair to the IRS to permit him to do so.

The difficulty with this argument is that there is nothing in section 523(a)(1)(B) or elsewhere in the Bankruptcy Code or in its legislative history to support the IRS' position. Whatever its view of the Debtor's actions, this Court cannot import into section 523(a)(1)(B)(ii) a qualification not imposed by Congress unless it appears that the Debtor's 1040's were filed too late to qualify as "returns" under the Internal Revenue Code. But there is nothing in the tax law which supports the argument that the Debtor's 1040's were nullities and therefore would not qualify as returns. The IRS conceded that the Debtor's 1040's were effective to commence the three-year assessment period under section 6501(a). Therefore, the Debtor's 1040's were not only in form a "return" for tax law, as stipulated by the IRS, but constituted a return for purposes of section 6501(a) and (c) as well. Whether or not assessment is solely within the control and discretion of the IRS, it is an important event whose timing, as *Badaracco* makes clear, can be limited by the taxpayer filing a return, however late. The Court need not decide whether a tax return filed after the IRS has made an assessment comes too late because it serves no tax purpose. Here, it is clear that the 1040's were not nullities under the tax law, whatever the Debtor's motivation in filing them.

The IRS argues that the Court's conclusion will reward debtors who choose not to self-assess and ignore and abuse the tax collection system. But the plight of the IRS and the tax collection system appears considerably less dire than the IRS suggests in light of 11 U.S.C. § 523(a)(1)(C). This section renders nondischargeable taxes which a taxpayer has willfully attempted in any manner to evade or defeat. This will permit the IRS and the court to examine a debtor's motives in filing his return late, an examination which the IRS chose not to pursue in this case, and where the requisite attempt is found, to hold the taxes nondischargeable. Since Congress failed in section 523(a)(1)(B)(ii) to impose any of the constraints that the IRS now urges, it appears reasonable to conclude that it intended these concerns be addressed under section 523(a)(1)(C). The Court's order in conformity with this opinion is attached.

### ORDER

A memorandum of opinion was entered this day with respect to the cross motions for summary judgment of the Plaintiff, Edward J. Sullivan, and the Defendant, United States of America. For the reasons stated therein,

IT IS ORDERED, ADJUDGED, AND DECREED THAT

Plaintiff's motion for summary judgment is granted and his taxes for the years 1981 through 1984 are determined to be dischargeable pursuant to 11 U.S.C. § 523(a)(1)(B).