**In re Victoria L. BERTELT, a/k/a/ Victoria L. Paille, Debtor.**

**Victoria L. BERTELT, a/k/a Victoria L. Paille, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 95–0210–8G7.**

**Adversary No. 95–652.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 8, 1997.

Philip Doyle, Trial Atty./James A. Bruton, Tax Division, Dept. of Justice, Washington, DC, for Defendant.

Andrew S. Forman, Tampa, FL, for Plaintiff.

Bruce T. Russell, U.S. Dept. of Justice, Washington, DC, Benjamin A. Deluna, IRS, Jacksonville, FL, for U.S.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a Final Evidentiary Hearing on a Complaint to Determine Dischargeability of Debt filed by the Debtor, Victoria L. Bertelt. In her Complaint, the Debtor seeks a determination that her form 1040 income taxes for 1987, 1988, and 1989 are dischargeable pursuant to Section 523(a)(1)(A) and Section 507 of the Bankruptcy Code.

The United States of America (the United States) answered the Complaint and admitted that the taxes are not excepted from the Debtor's discharge pursuant to Section 523(a)(1)(A) of the Bankruptcy Code. The United States contends, however, that the taxes are excepted from discharge pursuant to Section 523(a)(1)(C) because the Debtor willfully attempted to evade or defeat the taxes.

### Background

The Debtor has been employed as a customer service representative for Northwest Airlines, Inc., or its predecessors, since 1972. The Debtor was married from 1971 to 1980, single from 1980 to 1988, and remarried in 1988.

The Debtor testified that she had never been involved in any tax disputes with the United States for the years prior to 1987. She testified that she filed income tax returns timely when she was single, and that she usually had received small tax refunds for those years, based on amounts withheld from her wages or salary.

On June 5, 1987, the Debtor completed a W–4 Form, Employee's Withholding Allowance Certificate, for 1987. On this Form, the Debtor checked the boxes stating that:

a. Last year I did not owe any Federal income tax and had a right to a full refund of ALL income tax withheld; AND

b. This year I do not expect to owe any Federal income tax and expect to have a right to a full refund of ALL income tax withheld.

Based on these responses, the Debtor entered the effective year (1987) and the word "exempt" in the box indicated. The Debtor did not file a tax return for 1987 on April 15, 1988, or within any extension granted by the United States.

On January 18, 1988, the Debtor completed a W–4 Form for 1988. The Debtor again indicated that she had not owed any income taxes for the previous year and that she did not expect to owe any income tax in 1988. The Debtor again entered the tax year and the word "exempt" in the box indicated. The Debtor did not file a tax return for 1988 on April 15, 1989, or within any extension granted by the United States.

On January 9, 1989, the Debtor completed a W–4 Form for 1989 and again noted that she had not owed any income tax in the previous year and did not expect to owe any income tax in 1989, and again wrote "exempt" with the applicable tax year in the box indicated. The Debtor did not file a tax return for 1989 on April 15, 1990, or within any extension granted by the United States.

On February 18, 1991, the United States filed a Substitute for Return for the Debtor's 1987 taxes because no return had been filed by the Debtor. On February 11, 1991, the United States filed a Substitute for Return

for the Debtor's 1988 taxes because no return had been filed by the Debtor for that year.

The United States thereafter commenced collection activities to recover the taxes assessed. The Debtor testified that she was contacted by the IRS, and that the IRS took money out of her bank account.

After these collection activities by the IRS, the Debtor filed income tax returns for 1987, 1988, and 1989.

On September 17, 1992, Richard Flemings, C.P.A., prepared a Form 1040 Income Tax Return for the Debtor for 1987. The Tax Return reflects that the Debtor received wages or salary in 1987 in the amount of $33,150, and that her taxable income for that year was $36,315. The Debtor's total tax liability for 1987 according to the return was $8,568. The Return further reflects that the sum of $1,012 had been withheld, so that the amount owed by the Debtor for her 1987 income taxes was $7,556.

On September 17, 1992, Richard Flemings, C.P.A., also prepared a Form 1040 Tax Return for the Debtor for 1988. The Return reflects that the Debtor received wages or salary in 1988 in the amount of $33,485, and that her taxable income in that year was $31,074. The Debtor's tax liability for 1988 according to the Return was $6,767. The Return does not reflect that any portion of this tax had been withheld from the Debtor's wages, so that the full amount was owed as her tax liability for 1988.

Also on September 17, 1992, the Debtor as taxpayer signed a Form 1040 Tax Return for 1989 prepared by Flemings & Company, P.A. This Return reflects that the Debtor received wages or salary in 1989 in the amount of $34,135, and that her taxable income for that year was $28,337. The Debtor's tax liability for 1989 according to the Return was $5,919. The Return further reflects that the sum of $1,024 had been withheld, so that the balance of her tax liability for 1989 was $4,895.

Other than as indicated above, the income taxes owed by the Debtor for 1987, 1988, and 1989 have not been paid.

On November 12, 1993, the Debtor completed a W-4 Form, Employee's Withholding Allowance Certificate, relating to her taxes for the 1993 tax year. On this Form, the Debtor claimed fifteen allowances. The number of allowances claimed was not calculated in accordance with the instructions on the Form. On April 10, 1994, the Debtor completed a W-4 Form relating to her taxes for the 1994 tax year, on which the Debtor claimed one allowance.

Based on these circumstances, the United States contends that the Debtor prepared fraudulent W-4 Forms for 1987, 1988, and 1989, by falsely claiming that she was "exempt" in those three years so that no taxes were withheld from her paychecks. The United States also asserts that the Debtor then continued the scheme by failing to file income tax returns for the same years, even though she had previously filed returns for a number of years prior to 1987. The United States claims that the Debtor's conduct constitutes a willful attempt to evade or defeat her taxes for 1987, 1988, and 1989 within the meaning of Section 523(a)(1)(C) of the Bankruptcy Code. Finally, the United States contends that the Debtor's willfulness is further evidenced by her claim of fifteen allowances on her W-4 Form in 1993, after she had faced collection efforts by the United States and consulted with an accountant.

In response, the Debtor testified that, in 1987, she thought that she had a choice regarding the filing of her tax returns because of the language contained in the W-4 Forms. Specifically, she testified that she thought that she was "exempt" because she had never paid any taxes in previous years in excess of the amounts withheld by her employer, and also because she did not expect to "owe" any additional taxes in the tax year at issue based on her tax history. She claims that she was never informed of her mistake by the United States until 1992. Finally, the Debtor testified that she simply procrastinated with regard to filing her tax returns for 1987, 1988, and 1989 because of personal problems that demanded her attention.

### Evidentiary Issue

The United States offered into evidence copies of the Debtor's W-4 Forms for 1985, 1987, 1989, 1993, and 1994. The Debtor identified the forms as those which she had signed and submitted to her employer.

The Debtor objected to the admission of the forms into evidence, however, asserting that the admission of the exhibits would violate her Fifth Amendment privilege against self-incrimination. As the basis for the objection, the Debtor argued that "... since the Debtor is required to submit this to her employer, in essence, it's a document that is a violation of her Fifth Amendment right against self-incrimination.... [F]or the purposes of those documents coming into evidence, [the Debtor] would object on the basis that because the Debtor is required to provide this information, that it should not be admissible because it may possibly incriminate her." These statements are the totality of the Debtor's objection.

The United States argued that the forms should be admitted for three reasons: the privilege has not been properly claimed, the privilege has been waived, and the privilege does not apply in this circumstance.

The Fifth Amendment to the Constitution of the United States provides in applicable part:

> ... nor shall [any person] be compelled in any criminal case to be a witness against himself, ...

Courts agree that the protection granted by the Fifth Amendment extends to Bankruptcy cases. *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir.1995); *Scarfia v. Holiday Bank*, 129 B.R. 671, 675 (M.D.Fla.1990).

Courts generally recognize the significance and gravity of the Fifth Amendment. *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). In this case, however, the Court concludes that the forms are not inadmissible based on the Debtor's Fifth Amendment privilege.

■ The Debtor asserts the privilege on the basis that she was required to provide the information and submit the W–4 forms to her employer. It appears to be well settled that "[t]he provision in section 3402 [of the Internal Revenue Code] requiring employees to file W–4 statements with their employers does not violate petitioner's Fifth Amendment right against self-incrimination." *Rowlee v. Commissioner of Internal Revenue*, 80 T.C. 1111, 1122, 1983 WL 14844 (T.C.1983), citing *United States v. Smith*, 484 F.2d 8 (10th Cir.1973). *See, also, Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976) ("[S]ince [the defendant] made disclosures instead of claiming the [fifth amendment] privilege on his tax returns his disclosures were not compelled incriminations. [footnote omitted] He therefore was foreclosed from invoking the privilege when such information was later introduced as evidence against him in a criminal prosecution."); *United States v. Flitcraft*, 863 F.2d 342 (5th Cir.1988) ("The argument that it is a violation of the fifth amendment right against self-incrimination to have to sign a W–4 form and 1040 tax return is ... without merit."); *United States v. Warinner*, 607 F.2d 210 (8th Cir.1979) ("[w]here [the appellant] was not required to file, but rather voluntarily filed the Form W–4E, the appellant is not shielded by the fifth amendment.")

■ The Court further notes the circumstances in which the Debtor now seeks to assert the privilege. The assertion of the privilege raises unique concerns in the context of dischargeability actions in bankruptcy cases. In *In re Bartlett*, 162 B.R. 73 (Bankr. D.N.H.1993), the court held that a voluntary chapter 7 debtor could not avoid producing documents necessary to a dischargeability action if the debtor intended to pursue the discharge of the particular debt. The court reasoned that debtors cannot be permitted to enjoy the benefits of bankruptcy protection and at the same time avoid its burdens.

> The debtor cannot use the bankruptcy court to broaden the benefits afforded to an accused by the Fifth Amendment. To do so would allow the debtor to use the Fifth Amendment as a shield, while impermissibly using the Bankruptcy Code as a sword with which to take an unfair advantage of creditors.

*In re Bartlett*, 162 B.R. at 79, quoting *In re Lederman*, 140 B.R. 49, 53 (Bankr.E.D.N.Y. 1992). "While a debtor is free to assert her fifth amendment privilege against self-incrimination during the bankruptcy proceedings, she 'may not turn the shield of the Fifth Amendment into a sword to cut h[er] way to a discharge....'" *In re Brady*, 154 B.R. 82, 86 (Bankr.W.D.Mo.1993) quoting *In re Connelly*, 59 B.R. 421, 447–48 (Bankr.N.D.Ill. 1986).

The Bankruptcy Court in *Chase Manhattan Bank v. Frenville*, 67 B.R. 858 (Bankr.

D.N.J.1986) addressed this tension inherent in the assertion of the Fifth Amendment privilege by a debtor in a dischargeability action. In *Frenville*, a creditor had commenced an action to deny the debtor's discharge and to determine the dischargeability of a particular debt, and the debtor did not respond to the allegations in the creditor's complaint on the ground that he was protected by the Fifth Amendment. The court approached the issue from an historical perspective and found that, prior to the enactment of the Bankruptcy Code, the assertion of the privilege was not available to enable debtors to avoid an adverse determination in actions to deny their discharge or to determine dischargeability. *Frenville*, 67 B.R. at 861. The court then concluded:

> [I]t is clear that Congress did not authorize the use of the privilege with respect to a claim concerning the dischargeability of a specific debt. Nowhere in 11 U.S.C. § 523 does the privilege arise.... Thus, at the very least, the precode law prohibiting the debtor from using the privilege with respect to the dischargeability of a particular debt under § 523 is still in effect.

*Id.* at 862. The bankruptcy court also found that the rationale underlying the precode rule remains valid.

> It is difficult to understand how a debtor can ask for relief by way of a discharge of all debts and further by way of the discharge of specific debts and continue to assert his right to avoid doing those acts which are necessary to justify the relief which he seeks. To use the colloquial expression "you can't have it both ways."

*Id.* The distinction drawn by the court contrasts those actions which are initially commenced *against* the person asserting the privilege, where the importance of the privilege is evident, and those actions in which the "debtors have affirmatively requested relief." *Id.*

In this case, the Debtor herself commenced this adversary proceeding seeking a determination that the claim of the United States is dischargeable. This is not a circumstance in which the Debtor is defending an action commenced by a creditor or third party. Finally, the Debtor does not appear to deny that the taxes are due, but contends only that they do not fall within any exception to discharge set forth in Section 523 of the Bankruptcy Code.

Consequently, the Debtor is affirmatively seeking the relief provided by the discharge of valid debts under Section 727, first by filing the chapter 7 petition and subsequently by commencing this adversary proceeding. The W–4 Forms that the Debtor attempts to exclude constitute the heart of the dischargeability action, in that they are key documents underlying the Debtor's failure to pay the taxes at issue. As stated in *Bartlett* and *Frenville, supra*, the Debtor may not use the bankruptcy system as a sword to discharge a valid claim, and at the same time use the Fifth Amendment as a shield to prevent the United States from defending the assertion of dischargeability.

■ Additionally, even if the Debtor were entitled initially to assert the Fifth Amendment privilege, the Debtor waived the privilege by her conduct during the litigation. See *In re Shamsiev*, 172 B.R. 144 (Bankr. N.D.Ga.1994) (the debtor waived his Fifth Amendment privilege by voluntarily submitting his affidavit in support of his motion for summary judgment in a dischargeability action); and In re *Mudd*, 95 B.R. 426 (Bankr.N.D.Texas 1989) (the debtor waived his Fifth Amendment privilege as to the production of documents by providing testimony concerning the documents and by producing documents of the same type as those in question.)

In this case, the United States contends that the Debtor identified the W–4 Forms at a deposition in preparation for the trial of this matter. Additionally, during the course of the trial before this Court, the Debtor identified the forms as those which she had signed and submitted to her employer. The Debtor waived her right to assert the privilege as to the details of the documents that she previously identified and acknowledged.

■ Further, the United States argues that the privilege was not properly asserted, citing this Court's case of *In re Wincek*, 202 B.R. 161 (Bankr.M.D.Fla.1996). Although the holding of *Wincek* is not applicable in this case, the comments in *Wincek* regarding assertion of the Fifth Amendment privilege are

applicable here. A debtor's mere statement that the requested information may tend to incriminate him is not sufficient to entitle him to invoke the Fifth Amendment. *Scarfia v. Holiday Bank,* 129 B.R. 671, 674 (M.D.Fla.1990). The debtor must present credible reasons why responding to the questions would pose a real threat of incrimination. *In re Connelly,* 59 B.R. 421, 434–35 (Bankr.N.D.Ill.1986). The debtor "must have reasonable cause to apprehend danger of self-incrimination from direct answers to the specific questions posed." *Id.* at 434. See also *Scarfia,* 129 B.R. at 674 ("In order to properly invoke the privilege, therefore, a debtor must produce, for the court, credible reasons why his answers would incriminate him.") The debtor is not required to establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege that he seeks to assert. *Connelly,* 59 B.R. at 434. He must, however, substantiate his claim that responding to the specific requests for information may tend to incriminate him. *Scarfia,* 129 B.R. at 673.

■ In this case, the Debtor has not justified her assertion of the privilege against self-incrimination. She asserts only that the documents may possibly incriminate her. There is no indication that the Debtor is under indictment, under arrest, or even under investigation. The Debtor has not provided any basis for her belief that the documents may tend to incriminate her, and has not demonstrated that the danger of incrimination is anything more than speculation.[1]

For the reasons discussed above, the Debtor's W–4 Forms for 1985, 1987, 1988, 1989, 1993, and 1994 are admissible into evidence.

### Applicable Law

The Bankruptcy Code excepts from discharge a debt for a tax where the debtor "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).

1. For example, the Debtor does not refer to 26 U.S.C. § 7205.

2. As to whether an affirmative act by the debtor is required to except a debt from discharge under this section, the conclusions of the courts are not necessarily uniform. In *Toti v. United States,* 24 F.3d 806 (6th Cir.1994), the Sixth Circuit Court of Appeals concluded that "... a plain reading of

Section 523(a) (1)(C) of the Bankruptcy Code provides:

### § 523. Exceptions to Discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or customs duty—

. . . . .

(c) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

■ It is generally held that the test to determine whether the debtor has "willfully attempted in any manner to evade or defeat" a tax is whether (1) the debtor had a duty under the law to pay the tax; (2) the debtor knew he had the duty; and (3) the debtor voluntarily and intentionally violated the duty. *In re Bruner,* 55 F.3d 195, 197 (5th Cir.1995).

■ With regard to the mental element[2] required under § 523(a)(1)(C), courts agree that the taxpayer must have voluntarily, consciously, or intentionally attempted to evade the tax. *United States v. Cox,* 189 B.R. 214, 216 (M.D.Fla.1995). Courts also agree that it is not necessary that the Debtor possessed a "bad purpose or evil motive." It is only necessary to prove that the Debtor acted voluntarily, consciously, and intentionally. *See In re Wright,* 191 B.R. 291, 293 (S.D.N.Y.1995); *In re Howard,* 167 B.R. 684, 686 n. 1 (Bankr.M.D.Fla.1994).

■ The United States bears the burden of proving nondischargeability by a preponderance of the evidence. *In re Wright,* 191 B.R. 291, 292 (S.D.N.Y.1995) citing *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

§ 523(a)(1)(C) includes both acts of commission and acts of omission." *See, also, Matter of Bruner,* 55 F.3d 195 (5th Cir.1995). Some courts do not view omissions as affirmative acts. *See In re Howard,* 167 B.R. 684 (Bankr.M.D.Fla.1994). In the case at issue, however, there are affirmative acts by the Debtor, so the Court need not analyze these possible differences.

Several cases have dealt specifically with circumstances in which the debtor has submitted false W–4 forms, and the court has been asked to determine whether the debtor's tax liability is nondischargeable under Section 523(a)(1)(C) of the Bankruptcy Code. In *In re Ketchum,* 177 B.R. 628, 631 (E.D.Mo.1995), the District Court stated:

> The bankruptcy court in this case did not err in considering evidence that the debtor filed false W–4 withholding statements and that he failed to file a tax return or pay his federal tax liability. The court did not err when it found this evidence to be sufficient proof of an intent to evade one's tax liability.

*In re Ketchum,* 177 B.R. at 630. Also, in *In re Gilder,* 122 B.R. 593 (Bankr.M.D.Fla. 1990), the debtor had submitted W–4 Forms to his employer in which he claimed to be either exempt from federal income withholding or entitled to ten withholding allowances. The Bankruptcy Court determined that proof of a debtor's conduct with the specific intent to evade a tax believed to be owing was sufficient as proof of a willful attempt to evade a tax for purposes of Section 523(a)(1)(C). *In re Gilder,* 122 B.R. at 595. The court concluded that:

> By filing false withholding forms, plaintiff intended to disrupt the orderly process of income tax collection by rendering the tax withholding mechanism inoperative. See, *Young v. Commissioner,* 46 T.C.M. (CCH) 1542, 1544 (1983). By failing to file his 1978 and 1979 income tax returns until induced by a Service representative, plaintiff forced the Service to determine the sources and amounts of his income. Id. Accordingly, because he willfully attempted to evade or defeat his 1978 and 1979 income tax liabilities, these debts are not dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C).

*In re Gilder,* 122 B.R. at 595.

### Discussion

■ In this case, the Court must determine if the Debtor willfully attempted in any manner to evade or defeat income taxes for the years 1987, 1988, and 1989. As discussed, the Court must determine if the Debtor had a duty to pay taxes, knew that she had the duty, and voluntarily and intentionally violated the duty. *In re Bruner,* 55 F.3d 195, 197 (5th Cir.1995).

### A. The duty.

The existence of the Debtor's duty to pay income taxes for 1987, 1988, and 1989 is not disputed. She earned wages or salary that exceeded $33,000 during each of the three years, and did not qualify for any exemption from tax liability that would eliminate the obligation to pay taxes on that income. The Debtor herself has characterized her position during the years in question as a "mistake." The Debtor ultimately filed returns showing income taxes due for these years.

### B. Knowledge of the duty.

The Debtor is intelligent and literate. She is a high school graduate, and has been employed by the same employer or its predecessors for over 24 years.

The Court finds that the Debtor understood the duty to pay income taxes, and understood the basic procedures by which the tax is determined and collected. She had participated in the process for a number of years prior to 1987 without incident or dispute. In the early 1980's, during the years in which she was single, the Debtor was subject to withholding from her wages and timely filed income tax returns. She testified that during this period she usually received small refunds. She testified that she did not remember ever having to pay any taxes "in conjunction with what had already been withheld during the year." The Court concludes that in 1987 the Debtor was aware of the obligation to pay income taxes, and that withholding was a mechanism for such payment.

The Debtor's explanation for her new belief that she was "exempt" from tax liability in 1987 is not credible. First, the Debtor testified that her initial source of information regarding the possibility of claiming that she was exempt consisted of casual or lunchtime conversations with co-workers. She testified that after these conversations, she exercised what she thought was her right. There is no

evidence regarding any other source of information or investigation by the Debtor.

Second, the Debtor testified that because of the statements printed on the W–4 Form ("Last year I did not owe any Federal income tax and had a right to a full refund of ALL income tax withheld, and this year I do not expect to owe any federal income tax and expect to have a right to a full refund of ALL income tax withheld"), she thought she had a choice either to file or not to file income tax returns. The statements on the Form are not ambiguous, however, and it is clear that she was not exempt according to these statements.

Finally, the Debtor testified that the reason that she thought she would not owe taxes at the end of the year and the reason that she did not file tax returns when they were due was that she thought the withholding was adequate. However, she had completed the withholding forms for those years claiming to be exempt, with very different information than in prior years (e.g.1985) when the withholding was adequate.

### C. Voluntary and intentional violation of the duty.

Because "intent" is rarely acknowledged, the Court must evaluate the evidence to determine whether the Debtor intentionally violated her duty to pay income taxes. "As direct proof of an intention to evade taxes may be difficult to establish, it may depend on circumstantial evidence and reasonable inferences properly drawn from the evidence of record." *In re Howard*, 167 B.R. 684, 687 n. 2 (Bankr.M.D.Fla.1994).

The Debtor testified that in 1987, when she claimed the exempt status, she did not believe that she was entitled to a refund of taxes which had been withheld in the year prior to 1987. On the W–4 Form for 1987, however, she indicated under penalty of perjury that "[l]ast year I did not owe any Federal income tax *and had a right to a full refund of ALL income tax withheld . . . ."* (Emphasis supplied.) The Debtor understood that in previous years she had paid taxes by withholdings, and had received only small refunds. She indicated on the W–4 Form, however, that she had been entitled to

a refund of *all* income tax withheld. On the W–4 Forms for 1988 and 1989, the Debtor indicated under penalty of perjury that she did not owe any income taxes for the previous year, and that she did not expect to owe any taxes for the current year.

Finally, although the Debtor received wages or salary in excess of $33,000 per year in 1987, 1988, and 1989, and was employed in the same capacity by the same employer as in previous years when she had owed income taxes and filed returns, she did not file income tax returns for 1987, 1988, or 1989 when they were due. In fact, the Debtor did not file the returns for those years until after the Internal Revenue Service had begun collection efforts and levied on her bank account.

The Court concludes that the evidence establishes that the Debtor's violation of her duty to pay taxes was voluntary and intentional.

### Conclusion

Based on the evidence, the Court concludes that the Debtor made voluntary, conscious, and intentional decisions to prepare and sign the W–4 Forms for 1987, 1988, and 1989, exempting herself from withholding, while knowing that her income taxes had been paid by withholdings for the previous several years. The Court further concludes that the Debtor did not file income tax returns for 1987, 1988, and 1989 when they were due, although she knew that income taxes were in fact due for those years. Based on the evidence, the Court concludes that the Debtor had a duty to pay taxes, that the Debtor knew she had the duty, and that the Debtor voluntarily and intentionally violated that duty.

Accordingly, the Court concludes that the Debtor willfully attempted to evade or defeat income taxes for 1987, 1988, and 1989.

Therefore;

**IT IS ORDERED** that the tax liability of the Debtor, Victoria L. Bertelt, for 1987, 1988, and 1989 income taxes, is determined to be excepted from discharge pursuant to Section 523(a)(1)(C) of the Bankruptcy Code. A

separate Final Judgment will be entered consistent with this opinion.