In re Robert McGRATH, Elizabeth McGrath, Debtors.

Robert McGRATH, Plaintiff,

v.

UNITED STATES of America and Internal Revenue Service, Defendants.

Bankruptcy No. 95–61690.
Adversary No. 96–70294A.

United States Bankruptcy Court, N.D. New York.

Nov. 17, 1997.

Stotnick, Arno, Bertrand & Welch (Daniel J. Arno, of counsel), North Syracuse, NY, for Debtors.

Bartholomew Cirenza, U.S. Department of Justice, Tax Division, Washington, DC.

MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This proceeding is before the Court upon the complaint of Robert and Elizabeth McGrath ("Debtors") filed on October 15, 1996. The Debtors seek a determination pursuant to section 523(a)(1) and (7) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") that certain taxes and interest thereon are dischargeable. Issue was joined upon the filing of an answer by the United States of America, through the Internal Revenue Service ("IRS"), on November 21, 1996.

The trial, which was originally scheduled for March 6, 1997, and adjourned twice thereafter on consent of the parties, was held in Utica, New York, on July 24, 1997.[1] At the conclusion of the trial, the IRS moved for the dismissal of the complaint. The Court reserved its decision on the motion and in lieu of closing arguments, the Court requested that the parties file post-trial briefs. The matter was submitted for decision on August 29, 1997.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)($l$), (b)(2)(I) and (O).

### FACTS

On May 16, 1995, the Debtors filed a voluntary petition ("Petition") for relief pursuant to chapter 7 of the Code.[2] According to Schedule F accompanying the Petition, the IRS held an unsecured claim of $ 135,000 for the tax years 1982–1991.

The Plaintiff testified between 1982 and 1984, the tax years at issue herein, he was employed as a laborer at a construction site in Oswego County, New York. *See* Trial

---

1. At the trial, the parties stipulated that Elizabeth McGrath was to be dropped as a named-plaintiff. For purposes of the Decision herein Robert McGrath will be referred to as "Plaintiff."

2. On September 18, 1996, the Court signed an order at the request of the Debtors reopening the case, which had been closed on September 15, 1995, in order to allow the Debtors to commence the adversary proceeding herein.

Transcript ("Tr.") at 11. Plaintiff's income was $35,730.58 in 1982, $32,453.83 in 1983 and $18,989.84 in 1984. *See* Joint Exhibits 17–19.[3]

In 1981 and 1982 the Plaintiff completed Employee's Withholding Allowance Certificates ("W–4's") claiming that he was exempt from withholding. *See* Joint Exhibits 10–13. Debtor admitted that he claimed the exemptions in order to "stretch my paycheck" as he "didn't seem to have enough money week to week to live." *See* Tr. at 12. As a result, no monies were withheld from his gross earnings for 1982–1984, *see* Joint Exhibits 16–18, and he failed to timely file returns for those years. *See* Tr. at 36. The Plaintiff acknowledges that prior to 1982 he had filed tax returns and was aware of the obligation to file such returns. *See id.*

It was the Plaintiff's testimony that he first received notification of his tax obligations in February 1987. *See* Tr. at 18 and Joint Exhibit 4 ("Notice of Deficiency"). William Continelli ("Continelli") testified on behalf of the IRS that as part of its regular procedure the Debtor should have received four notices concerning the unfiled returns. *See* Tr. at 61. However, the IRS was unable to produce any letters to support his testimony because, according to Continelli, such letters are computer-generated, and the IRS does not usually keep a separate copy. *See* Tr. at 72.

Continelli testified that after 3–4 notices have been sent to a taxpayer and at least one attempt at personal contact made, a substitute for return ("SFR") is prepared by the IRS, and a notice of deficiency sent to the taxpayer before assessing the tax. *See* Tr. at 55. Based on his review of the tax module set up for 1982,[4] Continelli testified that on or about June 18, 1984, SFR procedures were instituted by the IRS with respect to the Plaintiff. *See* Tr. at 56, Joint Exhibit 5. Similar SFR's were also prepared for 1983 and 1984. *See* Joint Exhibits 6 and 7. Tax

assessments for 1982–1984 were made by the IRS as follows:

| Tax Year | Assessment Date | Assessment Amount |
| --- | --- | --- |
| 1982 | July 27, 1987 | $11,168.00 |
| 1983 | July 27, 1987 | 8,656.00 |
| 1984 | July 27, 1987 | 3,590.51 |

*See* Tr. at 59.

In response to the Notice of Deficiency received in February, 1987, the Plaintiff testified that he contacted an accountant who prepared Form 1040 tax returns for him for 1982, 1983 and 1984. *See* Tr. at 18 and Plaintiff's Exhibits A and B and Joint Exhibit 19. It was the Plaintiff's recollection that the Form 1040s had been mailed to the IRS in the same envelope in November 1987; however, the IRS alleges that its records shows only the receipt of Form 1040 for 1984, which was stamped received November 17, 1987. *See* Joint Exhibit 19.

## DISCUSSION

■ As the party opposing the discharge of the tax obligation, the IRS has the burden of proving nondischargeability by a preponderance of the evidence. *See Wright v. IRS (In re Wright),* 191 B.R. 291, 292 (S.D.N.Y. 1995), citing *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Hindenlang v. United States,* 205 B.R. 874, 877 (Bankr.S.D.Ohio 1997), *aff'd,* 214 B.R. 847 (S.D.Ohio 1997). In this case, the IRS relies on Code § 523(a)(1)(B) and (C) for its assertion that the Plaintiff is not entitled to a discharge of the obligations associated with the tax years 1982–1984.

■ Code § 523(a)(1)(B) provides, *inter alia,* that Code § 727 does not discharge a debt for a tax for which a return, if required, (i) was not filed or (ii) was feed after the date on which such return was last due, and after two years before the date of the filing of the petition. Although the IRS contends that its records indicate the receipt from the Debtor of Form 1040 only for 1984, the arguments set forth in its post-trial brief focus not on non-receipt of the Form 1040 for 1982 and

---

**3.** The parties stipulated to the admission of Joint Exhibits 1–20.

**4.** According to Continelli, a tax module is "basically a transcript that shows all debits and credits to the account, it shows all transactions that are not directly debts or credits." *See* Tr. at 53; Joint Exhibits 1–3.

1983, which the Plaintiff testified were in the same envelope as that for 1984, but rather on he fact that the Form 1040s were received after the SFRs were prepared and the assessments were made by the IRS on July 27, 1987. It is the position of the IRS that "[t]he purpose of the federal income tax return is to self-report" income tax liabilities and that once the IRS has had to prepare the SFR and the taxpayer's liability has been assessed, the submission of Form 1040 is a nullity. *See* IRS' Post-trial Brief at 4–5.

The Code provides no definition of "return" as referenced in Code § 523(a)(1)(B). The *Supreme Court in Germantown Trust Co. v. Commissioner of Internal Revenue,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) set out four criteria for a return: (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law. *See id.* at 306–09, 60 S.Ct. at 566–569.

The IRS distinguishes the case of *Sullivan v. United States (In re Sullivan),* 200 B.R. 327 (Bankr.N.D.Ohio 1996) in which the court held that the filing of tax returns was not too late for he tax obligation to be deemed dischargeable. In that case, the debtor had filed Form 1040 after receiving a notice of deficiency but prior to any assessment by the IRS. The court indicated that it "need not decide whether a tax return filed after the IRS has made an assessment comes too late because it serves no tax purpose." *Id.* at 332. However, less than six months later that issue was addressed by Bankruptcy Judge Burton Perlman, sitting in the Southern District of Ohio, in a case factually similar to the matter herein. In *Hindenlang* Judge Perlman concluded that the tax forms filed by the debtor after the SFR had been prepared and after the IRS had assessed the debtor's tax liabilities *constituted returns* for purposes of Code § 523(a)(1)(B). The court found the statute to be clear in its plain language and concluded that it "need not go any further in interpretation of the statute." *See In re Hindenlang,* 205 B.R. at 877, citing *United States v. Ron Pair Enterprises, Inc.,*

489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The court in interpreting the plain language of the statute concluded that Congress had intended to allow the taxpayer/debtor to file a return regardless of whether a prior assessment had been made by the IRS. *See In re Hindenlang,* 205 B.R. at 878. The court noted that Congress was aware of the significance of tax assessments and had included reference to them in Code § 507(a)(8)(A)(ii). Yet, Congress made no reference to assessments in enacting Code § 523(a)(1)(B). Instead, Congress had required that in order to be eligible for a discharge of any tax the return had to be fled at least two years before the filing of the petition. 11 U.S.C. § 523(a)(1)(B)(ii). *See id.* Congress failure to include the requirement that consideration be given to whether an assessment had occurred convinced the court that the exclusion was not inadvertent. *See id.,* quoting *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1197 (6th Cir. 1983) ("It is a fundamental rule of statutory construction that inclusion in one part of a congressional scheme of that which is excluded from another part reflects a congressional intent that the exclusion was not inadvertent"). Judge Perlman concluded that "the section creates a bright-line rule which says that if the debtor's return was filed less than two years prepetition, the associated taxes are nondischargeable." *Id.* In support of its conclusion, the court relied on a statement found in *In re Sullivan* indicating,

> Section 523(a) reflects a compromise between conflicting objectives of bankruptcy and tax law—providing the debtor a fresh start and enforcing tax collections. The obligation for recent taxes is not dischargeable even though the debtor has filed all returns and paid all taxes to the extent of his ability. On the other hand old taxes are dischargeable unless the debtor is guilty of fraud or has willfully attempted to avoid or defeat the tax, 11 U.S.C. § 523(a)(1)(C), or has failed to file a required return. 11 U.S.C. § 523(a)(1)(B)(i). In the latter situation, the debtor may still discharge the taxes in question if he files a late return and if

more than two years expire before he files his bankruptcy case. *Id* .

*In re Sullivan*, 200 B.R. at 331.

The Court has made an independent review of the cases cited by the IRS in support of its position. In *Gushue v. IRS (In re Gushue)*, 126 B.R. 202 (Bankr.E.D.Pa.1991), the court concluded that the SFRs prepared by the IRS did not qualify as returns under 26 U.S.C. § 6020(a) and that the stipulated decision incorporating the agreement between the debtor and the IRS also did not qualify. In *Arenson v. United States (In re Arenson)*, 134 B.R. 934 (Bankr.D.Neb.1991), *aff'd*, 145 B.R. 310 (D.Neb.1992), the debtor had not filed Form 1040 for the 1981 and 1982 tax years. The bankruptcy court concluded that the amended returns filed by the debtor, after the IRS had prepared SFRs and had rendered its assessment against the debtor, in which the debtor asserted that he had no tax liability for the years in question were not returns which would operate to discharge his tax liabilities. *See id.* at 935. The debtor in *Gentry v. United States (In re Gentry)*, 1995 WL 644045 (Bankr.M.D.Tenn. 1995) asserted that he was entitled to a discharge of his tax obligations based on the filing of a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" (Form 870) and Form 4089, which he argued constituted "constructive filing." *See id.* at *1. The court concluded that the execution and submission of the forms came too late having been filed some 16 months after the IRS' assessment. *See id.* at *2. The court never discussed whether the forms actually constituted a return for purposes of dischargeability.

The Court is not persuaded by these cases and finds no reason to diverge from the position taken by the court in *In re Hindenlang* based on the clear language of the statute. Unlike the three cases cited by the IRS, the Plaintiff herein did file Form 1040 for 1982–1984, albeit after the IRS had made its assessments, acknowledging his tax liability. Therefore, the Court finds no basis for holding the Plaintiff's tax obligations for 1982–1984 nondischargeable pursuant to Code § 523(a)(1)(B). However, the Court must also examine whether Code § 523(a)(1)(C) provides an alternative basis for denying the dischargeability of the Plaintiff's tax obligations.

■■■ The Code excepts from discharge a debt for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). There have been no allegations that the Plaintiff made a fraudulent return. Therefore, the Court will focus its analysis on whether the Plaintiff willfully attempted to evade or defeat his tax obligations for 1982–1984.

There has been some dispute among the courts concerning whether to apply a civil or criminal standard in determining whether a tax debt is dischargeable. The majority of courts have concluded that the civil standard is the appropriate standard. *See, e.g., Bruner v. United States (In re Bruner)*, 55 F.3d 195, 197 (5th Cir.1995); *Langlois v. United States*, 155 B.R. 818, 821 (N.D.N.Y.1993); *United States v. Toti (In re Toti)*, 149 B.R. 829 (E.D.Mich.1993), *aff'd* 24 F.3d 806 (6th Cir.1994), *cert. denied* 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994); *Smith v. United States (In re Smith)*, 202 B.R. 277 (S.D.Ind. 1996); *Ketchum v. United States (In re Ketchum)*, 177 B.R. 628 (E.D.Mo.1995); *United States v. Freidus (In re Freidus)*, 165 B.R. 537, 541 (Bankr.E.D.N.Y.1994); *but see Haas v. IRS (In re Haas)*, 48 F.3d 1153, 1157 (11th Cir.1995); *Gathwright v. United States (In re Gathwright)*, 102 B.R. 211, 213 (Bankr. D.Or.1989).

Under the civil standard, there is no need to establish an affirmative act by the debtor or that the debtor possessed a "bad purpose or evil motive." *See Bertelt v. United States (In re Bertelt)*, 213 B.R. 173 (Bankr.M.D.Fla. 1997). Instead, all that is necessary is that there be evidence that the taxpayer voluntarily, consciously or intentionally attempted to evade the tax. *See id.* at 179–180 (citations omitted). In this regard, the courts consider whether (1) the debtor had a duty under the law; (2) the debtor knew that he had the duty, and (3) the debtor voluntarily and intentionally violated the duty. *See Bruner*, 55 F.3d at 197.

**394**

In this case, the Plaintiff does not dispute his duty to file tax returns and to pay income taxes. Indeed, the Form 1040s he eventually filed evidence an obligation for income taxes for 1982–1984. The Plaintiff also testified that prior to 1982 he had filed tax returns and had paid income taxes. Thus, he was fully aware of his duty, and yet the record indicates that despite the fact that he filed Form 1040 for the tax years 1982–1984 in November 1987, he has not paid the taxes due for those years.

The question left to be addressed by the Court is whether Plaintiff voluntarily and intentionally violated his duty. In *In re Ketchum* the court found that the debtor had filed false W–4s and had not made a voluntary payment on his tax obligations for 1982–1986. *See In re Ketchum*, 177 B.R. at 630. The court concluded that the evidence supported a finding of an intent to evade his tax liabilities for those years, and the court deemed them to be nondischargeable. *See id.* at 632. So too in *Gilder v. United States (In re Gilder)*, 122 B.R. 593 (Bankr.M.D.Fla. 1990), the debtor acknowledged having submitted false withholding statements and having failed to file tax returns for 1978–1979 until after he was contacted by a representative of the IRS. *See id.* at 595. The court concluded that "[b]y filing false withholding forms, plaintiff intended to disrupt the orderly process of income tax collection by rendering the tax withholding mechanism inoperative." *See id.* at 596. The court held that the debts were not dischargeable. *See id.* The same conclusion was reached by the court in *In re Bertelt* which found that the debtor had "made a voluntary, conscious and intentional decision to prepare and sign the W–4 Form for 1987, 1988 and 1989, exempting herself from withholding while knowing that her income taxes had been paid by withholdings for the previous several years." *See In re Bertelt* at 181. The court also noted that she had failed to file income tax returns for those years despite the fact that she knew they were due. The court determined that her liability for 1987–1989 was to be excepted from discharge. *See id., see also In re Smith*, 202 B.R. at 280 (finding debt for taxes was nondischargeable based on debtor's filing of false W–4 Forms); *In re Toti*,

149 B.R. at 834 (indicating that debt for taxes was nondischargeable as a result of debtor's failure to timely file income tax returns and failure to pay tax liabilities although financially able).

Under the facts and circumstances herein, the Court concludes that the Plaintiff willfully attempted to evade or defeat his tax liability as defined in Code § 523(a)(1)(C) by filing false W–4s with the IRS, failing to timely file Form 1040, and by failing to pay his tax obligations when due. Therefore, said tax obligations for 1982–1984 are deemed to be nondischargeable.

Based on the foregoing, it is hereby

ORDERED that the Plaintiff's complaint is dismissed; and it is further

ORDERED that Plaintiff's tax obligations for 1982–1984 are not dischargeable.